DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Joseph N. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his minor child in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 {¶ 2} Father is the natural father of J.N., born August 23, 2001, and the step-father of J.B., born August 23, 1999. The mother of both children is not a party to this appeal. J.N. and J.B., at age one and three, were removed from their mother's home on May 9, 2003 because they were found wandering outside their home without an adult watching them. At that time, Father was not living in the home. The following week, Father began serving a long period of incarceration for a domestic violence conviction, stemming from an incident with the mother of the children.
 {¶ 3} On June 20, 2003, the children were adjudicated neglected and dependent children. The children were returned to live with their mother for several months under an order of protective supervision, but were again removed from the home during February 2004 due to renewed concerns about inadequate supervision.
 {¶ 4} CSB moved for permanent custody of the children on March 21, 2005. Following an evidentiary hearing in January 2006, the trial court granted the motion and placed both children in the permanent custody of CSB. Father appeals and raises two assignments of error that will be consolidated to facilitate our review.
 ASSIGNMENT OF ERROR I
"The trial court's decision that it is in the best interest of the children to be placed in the permanent custody of [CSB] was against the manifest weight of the evidence."
 ASSIGNMENT OF ERROR II
"The Court's finding that [Father] has abandoned his children as defined in O.R.C. 2151.011(C) is against the manifest weight of the evidence."
 {¶ 5} Initially, we must note that, although Father is challenging the trial court's order of permanent custody as it pertains to both J.N. and J.B., as indicated above, he is not the father of J.B. Father makes no legal argument, nor is this Court inclined to make an argument for him, that he has standing to appeal the termination of parental rights of J.B., as he concedes that he is not the child's father. Consequently, this Court will confine its discussion to the termination of Father's parental rights to his child, J.N.
 {¶ 6} Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C.2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 7} When reviewing the weight of the evidence, this Court applies the same test in civil cases as it does in criminal cases. Tewarson v. Simon (2001), 141 Ohio App.3d 103, 115. "`The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" (Alterations sic). Id., quoting State v.Thompkins (1997), 78 Ohio St. 3d 380, 387, quoting State v.Martin (1983), 20 Ohio App. 3d 172, 175.
 {¶ 8} The trial court found that the first prong of the permanent custody test was met for two reasons: (1) the children had been in the temporary custody of CSB for more than 12 of the prior consecutive 22 months and (2) the parents had abandoned the children. The trial court also found that permanent custody was in the best interests of both children. Consequently, it terminated parental rights and placed both children in the permanent custody of CSB. Father challenges the trial court's findings on both prongs of the permanent custody test.
 {¶ 9} Through his second assignment of error, Father challenges the trial court's finding that he had abandoned his child. R.C. 2151.011 (C) provides:
"For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."
 {¶ 10} The trial court found that Father had abandoned J.N. because he went to Florida from May to August of 2005 and had no contact with J.N. during his long absence. Father concedes that the evidence demonstrated that he was gone from the state for 98 days, but maintains that there was also evidence that he maintained telephone contact with J.N. during that time. Consequently, he contends that the trial court's finding of abandonment was erroneous.
 {¶ 11} The trial court explained in its judgment entry that, although Father testified that he had called J.N. repeatedly, he did not find his testimony credible. Instead, the trial judge chose to believe the testimony of the caseworker that Father had not had any contact with J.N. during his three month absence. A review of the record, however, reveals that both the caseworker and the foster mother testified that Father made one telephone call to J.N. during his three-month absence. Therefore, the trial court's finding that there had been absolutely no contact was not correct.
 {¶ 12} Even if the trial court had erred in its finding that Father had abandoned his child, however, that error would not require reversal of the permanent custody order because the trial court had an alternate basis for terminating parental rights. As indicated above, the trial court found a second basis to satisfy the first prong of the permanent custody test: that the children had been in the temporary custody of CSB for the requisite "12 of 22" months prior to the filing of the motion for permanent custody. Father does not dispute that finding and, in fact, conceded during the hearing that "12 of 22" had been established.
 {¶ 13} Through his first assignment of error, Father challenges the trial court's finding that permanent custody was in the best interest of J.N. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C.2151.414(D)(1)-(5).
 {¶ 14} Because the trial court found that Father had abandoned his child, it found that R.C. 2151.414(E)(10) applied here. Although this finding was not completely correct because the evidence was undisputed that Father did make one telephone call to J.N. from Florida, it does not seem that the trial court's best interest decision placed great weight on the finding of abandonment, other than to note it briefly in one sentence of the opinion. It appears that the trial court simply factored the three-month lack of contact with J.N. into its overall consideration of Father's interaction and interrelationship with J.N., which it was required to do by R.C. 2151.414(D)(1), even if there had been no finding of abandonment. Thus, any error in the trial court's finding of abandonment had only minimal impact on its weighing of the best interest factors.
 {¶ 15} The evidence of Father's interaction and interrelationship with J.N. includes several long periods of Father and J.N. having no contact. At the time this case began in May, 2003, J.N. was less than two years old. Father was not then living in the home and, according to his own testimony, Father had not been living with J.N. and his mother for the past six months. One week after J.N. was removed from his mother's home, Father started a term of incarceration for a domestic violence conviction that apparently continued for the next eight months. While he was incarcerated, Father wrote to the caseworker to inquire about his case plan, but he had no interaction with J.N. during that period.
 {¶ 16} Father was released from prison during March 2004 and began supervised visits with J.N. shortly thereafter. Father's visitation progressed fairly quickly to overnight and weekend visits at Father's home. CSB even pursued a placement of J.N. with Father, but that issue was held in abeyance so that Father could resolve some issues with his housing and complete other requirements of his case plan such as drug screening and anger management. Father failed to appear, however, at the January 2005 hearing scheduled on the issue of legal custody.
 {¶ 17} The last time Father visited with J.N. was April 15, 2005. In May 2005, Father went to Florida for three months, attempting to obtain employment there. Father testified that the caseworker had suggested that he go to Florida to find work, but the caseworker testified to the contrary. While in Florida, Father called J.N. only once. When Father returned, he left a few letters with the caseworker to be delivered to J.N., but visitation did not resume at that time because Father had told the caseworker that he would be returning to Florida. Nonetheless, the court ordered that visitation would go forward after Father submitted at least three urine samples for drug testing. Father never complied with the court order, so visitation was never resumed.
 {¶ 18} During the two years and eight months between CSB's filing of the complaint and the permanent custody hearing, Father had regular interaction with J.N. for approximately one year, from March 2004 until April 2005. For the remainder of this period, a total of over one and a half years, Father did not visit with J.N., but had interaction with him only through an occasional letter or phone call.
 {¶ 19} The guardian ad litem testified on behalf of J.N. and opined that permanent custody was in his best interest. She indicated that this was the longest case with which she had ever been involved and emphasized that CSB had made every effort to place J.N. with one of his parents, but that neither of them demonstrated that they were willing or able to care for this child. The guardian ad litem stressed that, despite this lengthy period of time, Father had yet to comply with several of the requirements of his case plan.
 {¶ 20} The custodial history of J.N., who was only five and a half years old at the time of the permanent custody hearing, included a lengthy period in the temporary custody of CSB. Moreover, as explained in detail above, Father had not lived with J.N. for more than three years and he went for long periods during that time without even seeing or contacting his child.
 {¶ 21} Although, at one time, Father had spent approximately one year developing a relationship with J.N., he had not seen him for the nine months prior to the hearing. Father had spent more than half of J.N.'s life having no involvement with him, and he did not seem to be working toward reuniting with his child. During this lengthy period of time, Father had failed to address CSB's concerns about potential drug or alcohol abuse, as he had failed to complete an assessment and was not submitting urine samples for drug and alcohol screening as required.
 {¶ 22} Father had also failed to complete anger management classes, a goal that was added to his case plan as this case progressed, although why it was not part of the initial case plan was a point that was not thoroughly explained by CSB. Father had a long history of domestic violence including a conviction of domestic violence for which he served an eight-month term of incarceration and he had not undergone any anger management classes. Moreover, at the time of the permanent custody hearing, Father had an outstanding warrant on new charges stemming from a fight at his uncle's house.
 {¶ 23} J.N., who had been involved in this case for well over half of his life, was in need of a legally secure permanent placement. The evidence before the trial court demonstrated that neither parent was prepared to care for J.N. and there were no suitable relatives willing or able to take legal custody. Although the trial judge questioned the parties about the possibility of placement in a planned permanent living arrangement, all parties agreed that such a placement was not appropriate in this case. Consequently, the trial court reasonably concluded that a legally secure permanent placement could only be achieved by placing J.N. in the permanent custody of CSB.
 {¶ 24} Given this evidence, the trial court did not err in concluding that permanent custody was in the best interest of J.N. As neither party disputes that the requisite "12 of 22" prong had also been satisfied, the trial court did not err in placing J.N. in the permanent custody of CSB and terminating Father's parental rights. The first and second assignments of error are overruled.
 {¶ 25} The assignments of error are overruled and the judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Carr, J. Boyle, J. concur.