OPINION *Page 2 
{¶ 1} Appellant Sharee Williams ("mother") appeals the August 18, 2006 Judgment Entry, and the August 18, 2006 Findings of Fact and Conclusions of Law entered by the Stark County Court of Common Pleas, Family Court Division, which terminated her parental rights, privileges and obligations with respect to her two minor children, and granted permanent custody of the children to appellee Stark County Department of Job and Family Services ("the department").
 STATEMENT OF THE CASE AND FACTS[1] {¶ 2} On June 24, 2005, the department filed a Complaint, alleging Dontrez Williams (dob 8/27/96) and Jay'mere Williams (dob 1/1/05) were dependent, neglected, and/or abused children, and seeking temporary custody of the children. The Complaint was based upon Jay'mere's testing positive for cocaine and marijuana at his birth, and mother testing positive for marijuana at the same time. Additionally, although mother initially agreed to cooperate with services through a non-court course, mother failed to do so. Following a shelter care hearing on June 24, 2005, the trial court placed Dontrez and Jay'mere in the temporary custody of the department.
 {¶ 3} At a September 9, 2005 hearing, mother stipulated to a finding of neglect with respect to Jay'mere and a finding of dependency with respect to Dontrez. The department moved to withdraw the abuse allegations, which the trial court granted. The trial court continued temporary custody of the children with the department.
 {¶ 4} The trial court approved and adopted a case plan for mother, which included completing a psychological evaluation; completing a substance abuse *Page 3 
evaluation and following all recommendations; obtaining appropriate housing; and completing parenting skills classes. The department's primary concern regarding mother's ability to parent was her substance abuse problem. Mother also suffers mental and emotional problems, which are believed to have been caused by her own abusive childhood. The department filed a Motion for Permanent Custody on February 23, 2006. The trial court scheduled a hearing on the motion for July 31, 2006.
 {¶ 5} Michaele Singleton, the on-going worker assigned to the case, testified regarding mother's compliance with her case plan. Singleton stated mother was referred to Quest Recovery Services, where she was assessed. Due to concerns about mother's mental and emotional health, Quest recommended she receive treatment through the Renew Program, which could provide her with counseling as well as substance abuse treatment. Mother participated in the intake process at Renew, but failed to commence any treatment.
 {¶ 6} Singleton noted the department referred mother to Turning Point, a community response team, to assist her with services. Mother worked with Rev. Max Millender, the program director, and Bonita Brooks, a case manager. Mother attended, but did not complete her parenting classes. At one point in November, 2005, mother was stable and Singleton attempted to place Jay'mere with mother at the YWCA, where she was staying. Singleton arranged protective daycare. Mother had a worker from the YWCA contact Singleton and advised the case worker mother was using drugs. Singleton stated "things really, really, really went downhill from there." Tr. at 10. Mother tested positive for marijuana during this time period. *Page 4 
 {¶ 7} Thereafter, mother abandoned all services. She had no contact with Singleton, Rev. Millender, and Bonita Brooks between November, 2005, and March, 2006. Mother's whereabouts were unknown. Mother did not have any contact with the children during this time. Mother did not submit to a urine screen after November, 2005.
 {¶ 8} On February 10, 2006, mother was involved in a serious automobile accident, and was in a coma for two weeks. Singleton attempted to contact mother while she was hospitalized, but mother would not permit anyone from the department to have contact with her. Mother eventually allowed Rev. Millender and Brooks to see her. In April, 2006, Singleton reestablished contact with mother.
 {¶ 9} The department made several attempts to facilitate visits between mother and the children. These efforts were met with little success. Mother missed visits or was late for them. Although the department provided her with bus passes to assist her in attending the visits, mother informed Singleton she did not know how to use the passes. Singleton offered to transport mother to the visits. Mother set up a visit appointment, but failed to attend. Mother visited Jay'mere a total of four times between November, 2005, and the date of the final hearing. She visited Dontrez twice, once in November, 2005, and once in March, 2006.
 {¶ 10} Rev. Millender testified mother had been attending classes in drug and alcohol awareness, drug and alcohol abuse, and anger management. Mother completed Rev. Millender's 12 week "About Face" program. After learning mother had relapsed, Rev. Millender attempted to reengage mother in the services offered through his program. Rev. Millender explained, at times, mother attended on a regular basis, *Page 5 
but at other times, she was inconsistent with her attendance. After mother's release from the hospital, Rev. M il lender tried to contact her, but did not receive any response.
 {¶ 11} Beverly Jordan, CEO of the Stark Social Workers Network, testified mother and the children were referred to her organization, and she began working with the family in June, 2005. Jordan explained her organization worked as the contact to connect people to appropriate agencies and programs. Jordan stated mother initially was cooperative and was drug free, but she subsequently became negligent in keeping appointments. After mother's release from the hospital, Jordan had no further contact with mother. On cross-examination, Jordan acknowledged a strong bond between mother and the children.
 {¶ 12} After the department rested its case, the trial court proceeded to the best interest portion of the hearing. Michaele Singleton testified Dontrez, who is 9 years old, and Jay'Mere, who is 1 year old, are African American children. Dontrez has been diagnosed with Attention Deficit Hyperactivity Disorder. He is currently taking medication. Dontrez has expressive and receptive language disorders, which require speech pathology. Although Dontrez is a bright child, he struggles in school. The boy is receiving services to address these concerns. Jay'Mere suffers from severe asthma, and is treated at a respiratory center, where the boy was being tested for cystic fibrosis. The children have been placed together in a foster home since November, 2005. The home provides the boys with a stable environment and the children have made great improvements. As of the date of the hearing, the department had not identified an adoptive home. Singleton noted although Dontrez has a strong bond with mother, and *Page 6 
loves her, he needs a stable, consistent and nurturing environment, which mother is unable to provide. Singleton added Jay'Mere's bond with mother is weak.
 {¶ 13} Kimberly Oliver, the Guardian ad Litem for the children, submitted a written report to the trial court, in which she recommended the department be granted permanent custody of the children. Although Oliver attended the hearing, neither mother nor the department requested an opportunity to question the Guardian.
 {¶ 14} Via Findings of Fact and Conclusions of Law filed August 18, 2006, the trial court found mother had abandoned the children, and the children could not or should not be placed with mother within a reasonable period of time as she had continuously and repeatedly failed to remedy the problems which caused the initial removal of the children. The trial court concluded it was in the children's best interests to grant permanent custody to the department. Via Judgment Entry filed August 18, 2006, the trial court terminated mother's parental rights, privileges and obligations with respect to Dontrez and Jay'Mere, and granted permanent custody of the children to the department.
 {¶ 15} It is from this judgment entry and the findings of fact and conclusions of law mother appeals, raising the following assignments of error:
 {¶ 16} "I. THE TRIAL COURT ERRED WHEN IT FOUND APPELLANT'S CHILDREN ABANDONED.
 {¶ 17} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE. *Page 7 
 {¶ 18} "III. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 19} This appeal is expedited and is being considered pursuant to App. R. 11.2(C).
 I, II {¶ 20} In her first assignment of error, mother contends the trial court's finding she abandoned Dontrez and Jay'mere was against the manifest weight and sufficiency of the evidence. In her second assignment of error, mother maintains the trial court's finding the boys cannot or should not be placed with her was against the manifest weight and sufficiency of the evidence.
 {¶ 21} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.CE. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 22} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court must schedule a hearing, and provide notice, upon filing of a motion for permanent *Page 8 
custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 23} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 24} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 25} The trial court herein found two circumstances in R.C.2151.414(B)(1) were present. First, the trial court found mother had abandoned the children. The trial court also found the boys cannot or should not be placed with mother within a reasonable time as she failed continuously and repeatedly to remedy the problems *Page 9 
which caused the initial removal of the children. We shall address each circumstance in turn.
 {¶ 26} R.C. 2151.011(C) explains:
 {¶ 27} "For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."
 {¶ 28} As set forth in the Statement of Case and Facts, supra, mother had two visits with Dontrez during the pendency of the case, one in November, 2005, and the other in March, 2006. Mother had four visits with Jay'mere between November, 2005, and July 31, 2006, the date of the final hearing. The department filed its motion for permanent custody on February 23, 2006. Singleton testified mother did not see the children between November, 2005, and March, 2006. Mother argues the evidence presented at the hearing was not specific enough to establish by clear and convincing evidence 90 days had passed between her last visit and the filing of the motion for permanent custody. Mother saw Dontrez in November, 2005. No one testified as to the exact date of the visit; therefore, the trial court could not determine if 90 days passed before the department filed the motion for permanent custody on February 23, 2006. With respect to Jay'mere, mother explains the testimony established she saw the baby four times in a seven month span (approximately 210 days), which calculates into a 52 day period between each visit (210 days divided by 4).
 {¶ 29} In support of her position, mother relies upon In re:C.W., 104 Ohio St.3d 163, 2004-Ohio-6411, in which the Ohio Supreme Court held: *Page 10 
 {¶ 30} "[B]efore a public children-services agency or private child-placing agency can move for permanent custody of a child on R.C.2151.414(B)(1)(d) grounds [the 12 of 22 provision], the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22-month period. In other words, the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)."
 {¶ 31} Recently, in In re: Scullion Children (March 2, 2007), Stark App. No. 2006CA00308, unreported, this Court held the logical extension of In re: C.W. requires a finding a parent failed to visit or maintain contact with the child for a period of ninety days before an agency can move for permanent custody on the ground of presumed abandonment. R.C.2151.414(B)(1)(b). Although Singleton did not testify as to specific dates of visits, her statement mother had no contact with the children between November, 2005, and March, 2006, failed to provide the trial court with clear and convincing evidence mother abandoned Dontrez and Jay'mere.
 {¶ 32} However, we find such error does not require reversal of the permanent custody determination under the two-issue rule. The trial court had an alternate, independent ground for terminating parental rights, finding the children cannot and/or should not be placed with mother at this time or in the foreseeable future as she failed continuously and repeatedly to remedy the problems which caused the children to be removed from her home.
 {¶ 33} As set forth in the Statement of Case and Facts, supra, Michaele Singleton, the ongoing family case worker with the department, testified mother had made little progress on her case plan. Mother underwent her initial psychological *Page 11 
assessments, but did not begin the recommended treatment plan. Mother continued to use drugs despite the fact her substance abuse was a major factor in her losing custody of the children. Mother did not make efforts to visit with the boys despite the department's willingness to provide her with bus passes and even rides to the visits. Mother did not complete parenting classes.
 {¶ 34} Based upon the foregoing, and the entire record in this matter, we find the trial court's finding Dontrez and Jay'mere cannot or should not be placed with mother was not against the manifest weight or sufficiency of the evidence.
 {¶ 35} Mother's first assignment of error is sustained. Mother's second assignment of error is overruled.
 III {¶ 36} In her third assignment of error, mother contends the trial court's finding the best interests of Dontrez and Jay'mere would be served by granting permanent custody to the department was against the manifest weight and sufficiency of the evidence.
 {¶ 37} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the *Page 12 
child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 38} The record reveals Dontrez, who is 9 years old, and Jay'mere, who is 1 year old, are African American children. Dontrez has been diagnosed with Attention Deficit Hyperactivity Disorder, and is currently taking medication. Mother did not consistently give the boy his medication, resulting in problems at school. Dontrez has expressive and receptive language disorders, which require speech pathology. Jay'mere suffers from severe asthma, and is treated at a respiratory center, where he is being tested for cystic fibrosis. The children have been placed together in a foster home since November, 2005. The home provides the boys with a stable environment and the children have made great improvements. As of the date of the hearing, the department had not identified an adoptive home. Although Dontrez has a strong bond with mother, Singleton opined the severing of the bond did not outweigh the children's need for stability.
 {¶ 39} Based upon the foregoing, and the entire record in this matter, we find the trial court's determination it was in the best interest of Dontrez and Jay'mere to grant permanent custody to the department was not against the manifest weight or sufficiency of the evidence.
 {¶ 40} Mother's third assignment of error is overruled. *Page 13 
 {¶ 41} The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.
 Hoffman, P.J. Wise, J. and Edwards, J. concur *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed. Costs assessed to appellant.
[1] The alleged fathers of the children are not parties to this appeal. *Page 1