DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, David Henige, appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights to his minor child and placed the child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 {¶ 2} Henige is the natural father of A.S., born July 29, 1998. Henige is not the father of the other child at issue in this case, T.S. The children's mother ("Mother") is not a party to this appeal. When CSB became involved with these *Page 2 
children, they were both living with Henige. Mother was not living with the children at that time and her whereabouts were unknown.
 {¶ 3} On April 5, 2005, Police came to Henige's home due to reports that the children were playing outside with knives and were not being supervised. When the police arrived, they discovered the unsupervised children, then eight and six years old, playing with steak knives in the front yard and threatening other neighborhood children. Henige was arrested, charged with child endangering, and later convicted of that offense. Although the police had found what they believed to be cocaine inside the home, drug charges against Henige were later dismissed.[1]
 {¶ 4} Henige does not dispute that he has a long-standing substance abuse problem. Consequently, the primary goal of Henige's case plan was to achieve sobriety. To achieve that goal, Henige was required to complete a drug treatment program and submit regular urine samples for drug screening. Henige was terminated from two different drug treatment programs, however, due to noncompliance and, of the 28 urine samples that he submitted for screening, 24 tested positive for cocaine. *Page 3 
 {¶ 5} Mother, on the other hand, did not even attempt to work with CSB on any reunification goals. At the time the children were removed from the home and throughout most of the case planning period, Mother's whereabouts were unknown. CSB believed that she also had a substance abuse problem but, because Mother never attempted to work with the caseworker, she did not complete even the first step toward identifying and remedying any substance abuse problem. The caseworker was able to make contact with Mother only three times, and Mother did not return the caseworker's calls.
 {¶ 6} On March 1, 2006, CSB moved for permanent custody of both children. Following a hearing, the trial court found that the children could not be placed with either parent within a reasonable time or should not be placed with either parent and that permanent custody was in their best interests. Henige appeals and raises one assignment of error.
 ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN ORDERING PERMANENT CUSTODY AND FINDING THAT [CSB] MADE `REASONABLE EFFORTS.'"
 {¶ 7} Henige contends that the trial court erred in terminating parental rights in this case because CSB failed to prove that termination of Mother's parental rights was warranted and because CSB failed to make reasonable efforts to reunify the children with Mother. *Page 4 
 {¶ 8} There are two preliminary standing issues that must be addressed at the outset of this review: Henige's standing to challenge the termination of parental rights as to T.S., who is not his child; and his standing to challenge the termination of Mother's parental rights.
 {¶ 9} Although Henige is challenging the trial court's order of permanent custody as it pertains to both A.S. and T.S, as indicated above, he is not the father of T.S. Henige makes no legal argument, nor is this Court aware of any, to establish that he has standing to appeal the termination of parental rights of T.S., as he is not the child's father. Consequently, this Court will confine its discussion to the termination of parental rights of his child, A.S. See In re J.N. andJ.B., 9th Dist. No. 23067, 2006-Ohio-2557, at ¶ 5.
 {¶ 10} Henige's standing to challenge the termination of Mother's parental rights as to A.S. is a different matter, however. This Court has repeatedly held that a parent appealing a permanent custody decision has standing to challenge the trial court's failure to award legal custody to a third party, because the denial of the legal custody motion impacted the parent's residual rights and ultimately led to the termination of parental rights. See, e.g., In re E.C., 9th Dist. No. 22355, 2005-Ohio-1633, at ¶ 5. This same type of reasoning has been applied to a parent's standing to raise the termination of the other parent's parental rights. In re Cazad, 4th Dist. No. 04CA36,2005-Ohio-2574, at ¶ 42 (holding that, because the trial court was required to find that the child cannot be placed with "either parent" *Page 5 
within a reasonable time, the appealing parent's residual parental rights were prejudiced by the termination of the other parent's rights). Therefore, Henige does have standing to challenge the termination of Mother's parental rights.
 {¶ 11} This Court will examine the termination of both parents' rights as they pertain to A.S. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95,99.
 {¶ 12} The trial court found that the first prong of the permanent custody test was satisfied because A.S. could not be placed with either parent within a reasonable time or should not be placed with either parent. See R.C. 2151.414(E). As to Mother, the trial court found that she had demonstrated a lack of commitment toward A.S. and had abandoned him. R.C. 2151.414(E)(4) and 2151.414(E)(1). *Page 6 
 {¶ 13} The trial court's findings are supported by the record. Mother's whereabouts were unknown throughout most of this case. She was gone from the home, and her whereabouts unknown during March 2005 when A.S. was removed from the home. Following his removal, Mother made no attempt to contact or visit with A.S. until after CSB filed the motion for permanent custody nearly one year later. A presumption of abandonment arises under R.C. 2151.011(C) when a parent fails to have contact with the child for more than 90 days. Henige has failed to demonstrate that the trial court erred in finding that Mother's lack of contact with A.S. for nearly a year constituted abandonment of the child.
 {¶ 14} The trial court found that A.S. could not be placed with Henige for several reasons including that Henige had failed to remedy the conditions that caused A.S. to be placed outside the home. See R.C. 2151.414(E)(1). From the time that A.S. was removed from the home, CSB's primary goal for Henige was to end his cocaine addiction. Henige started two treatment programs but was terminated from both due to noncompliance, which included failing to attend scheduled sessions. Moreover, Henige repeatedly tested positive for cocaine throughout the case planning period. Of the 28 urine samples he submitted, 24 tested positive for cocaine.
 {¶ 15} At the time of the permanent custody hearing, Henige was incarcerated because his positive drug screens had constituted violations of his *Page 7 
community control on the child endangering conviction. He was also facing new criminal drug charges stemming from a more recent incident at his home.
 {¶ 16} More than one year after A.S. had been removed from the home, Henige was finally admitting that he had a problem with cocaine. According to his own testimony, he had been in denial for quite some time, but was ready to admit that he was "addicted to crack cocaine" and that he needed to complete an inpatient drug treatment program to remedy his problem. He had not yet enrolled in such a drug treatment program, however. The trial court's finding that A.S. could not be placed with Henige because he had failed to remedy his cocaine addiction was fully supported by the evidence.
 {¶ 17} After the trial court found that A.S. could not be placed with either parent due to one or more of the factors under R.C. 2151.414(E), it was required to determine whether permanent custody was in the best interests of the child. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or *Page 8 
more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.] R.C. 2151.414(D)(1)-(4).[2]
 {¶ 18} The interaction and interrelationship of Mother with A.S. was minimal as she did not visit the child until he had been in temporary custody for almost a year. She also had little involvement with A.S. before he was removed from the home. Because Mother did not attend scheduled visitations with A.S., the caseworker and guardian ad litem had no opportunity to observe their interaction. Consequently, there was no testimony about the quality of interaction between Mother and A.S., the appropriateness of her actions, or whether there was a bond between the two.
 {¶ 19} Although Henige eventually visited A.S. when he was placed with a foster family, he did not call or visit the child while he was placed with the maternal grandparents because Henige did not get along with them. After A.S. was placed in foster care, Henige did visit and the visits went well.
 {¶ 20} The trial court conducted an in camera interview of A.S., but he was nervous and was not very forthcoming with his feelings. The guardian ad litem testified that A.S. wanted to stay with the foster family. The guardian explained *Page 9 
that, although he had initially supported reunification of Henige and A.S., he was disappointed by the lack of effort that Henige had made toward getting his child back. The guardian emphasized that Henige's long-standing substance abuse problem was preventing him from parenting A.S. and he had made only "last-minute" efforts to address the problem.
 {¶ 21} A.S. had lived outside the home for over a year, but during that time, Henige had made little progress toward conquering his problem with cocaine addiction. After one year, he was finally ready to admit that he had a problem, but he had not completed drug treatment and had failed to demonstrate that he could remain sober for an extended period of time.
 {¶ 22} During that same period of time, Mother had done nothing to be reunited with A.S. She did not maintain contact with the caseworker, she did not attend court hearings, and she did not visit with A.S. until the eleventh hour of the case planning period. Mother allegedly had a drug problem also, but she never had an assessment or even attempted to start treatment or submit to drug testing. She failed to sit through the entire permanent custody hearing and, while she was there, did not offer testimony or argument on her own behalf.
 {¶ 23} A.S. was in need of a legally secure permanent placement and neither parent was able to care for him any time in the foreseeable future. There were also no relatives or friends who had stepped forward to take custody of him. *Page 10 
Given the evidence before the trial court, it reasonably concluded that permanent custody was in the best interest of A.S.
 {¶ 24} Insofar as Henige also asserts that CSB failed to make reasonable efforts to remedy Mother's parenting problems, this Court has held that, although CSB is required to prove that it put forth reasonable efforts toward reunification, R.C. 2151.419 requires it to do so at several stages of the proceedings, but not at the permanent custody hearing. See In re K.H., 9th Dist. No. 22765, 2005-Ohio-6323, at ¶ 9-10. The Ohio Supreme Court recently agreed with that interpretation of R.C. 2151.419. See In re CF., 113 Ohio St.3d 73, 2007-Ohio-1104, at ¶ 41-43.
 {¶ 25} The trial court made prior findings in this case that CSB had exerted reasonable efforts toward reunification. Because the record fails to include transcripts of the hearings at which the relevant evidence was presented, however, this Court must presume propriety of the reasonable efforts findings.
 ¶ 26} Henige has failed to demonstrate any error in the trial court's permanent custody decision and his assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into *Page 11 
execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
SLABY, P. J. DICKINSON, J. CONCUR
[1] The reason for the dismissal of the drug charges is not clear from the record. There was a suggestion at the permanent custody hearing that the charges were dismissed because the substance found was not proven to be cocaine.
[2] The trial court did not explicitly find the factor set forth in R.C. 2151.414(D)(5) to be relevant in this case. *Page 1