[Cite as *In re E.F.*, 2016-Ohio-7265.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

IN THE MATTER OF: E.F., et al.     :

                                   :     CASE NOS. CA2016-03-003
                                                     CA2016-03-004
                                   :              CA2016-03-005
                                                     CA2016-03-006
                                   :              CA2016-03-007

                                   :

                                         O P I N I O N
                                   :     10/11/2016

                                   :


APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 20113041


Virginia Vanden Bosch, 9506 West State Route 73, Wilmington, Ohio 45177, Guardian Ad Litem

John Kaspar, 130 East Mulberry Street, Lebanon, Ohio 45036, attorney for children

Craig Newburger, 477 Forest Edge Drive, South Lebanon, Ohio 45065, for appellant, C.F.

M.F., 436 Curless Road, Blanchester, Ohio 45107

Richard Moyer, Clinton County Prosecuting Attorney, William C. Randolph, 1025 South South Street, Suite 400, P.O. Box 568, Wilmington, Ohio 45171, for appellee, Clinton County Children Services


**M. POWELL, P.J.**

{¶ 1}   Appellant, C.F. ("Mother"), appeals a decision of the Clinton County Court of

Common Pleas, Juvenile Division, granting permanent custody of her five children to

appellee, Clinton County Children Services (the "Agency").

{¶ 2} For purposes of this appeal, Mother and M.F. ("Father") are the parent of four girls, H.F. (born in 2001), Em.F. (born in 2004), El.F. (born in 2006), and S.F. (born in 2008), and one boy, L.R. (born in 2012).[1]

{¶ 3} The Agency first became involved with the family in 2010 when a daughter, not a party to this appeal, tested positive for marijuana at birth. On April 20, 2011, a deputy sheriff went to Mother's house to keep the peace while someone retrieved personal belongings. The four girls, H.F., Em.F., El.F., and S.F., were present at the time. While there, the officer observed that the house was filthy with rotten food laying around and discovered that Father was selling heroin out of the home. Subsequently, numerous drugs were retrieved from the house.

{¶ 4} On April 28, 2011, the Agency filed a complaint alleging that H.F., Em.F., El.F., and S.F. were abused, neglected, and dependent. On May 26, 2011, the juvenile court granted protective supervision to the Agency on an interim basis, granted temporary custody of the four girls to K.A. ("Maternal Grandmother"), and explicitly forbade either parent to have unsupervised contact with the girls. On August 4, 2011, the juvenile court adjudicated H.F., Em.F., El.F., and S.F neglected. Protective supervision with the Agency and temporary custody with Maternal Grandmother were continued. However, it was soon discovered that the parents had unsupervised contact with the girls in violation of the court order. Consequently, on August 18, 2011, the juvenile court granted temporary custody of the girls to B.R. ("Maternal Grandfather") and his wife. Protective supervision with the Agency was continued.

---

1. Father is not a party to this appeal. In its decision granting permanent custody to the Agency, the juvenile court found that Father had abandoned the children and that it was in the children's best interest to grant permanent custody to the Agency. The record shows that Father failed to visit or maintain contact with the children for more than 90 days, has substance abuse issues, never successfully complied with his case plans, and was in fact placed on and removed from his case plans several times during the proceedings.

{¶ 5} A case plan was implemented to reunify Mother and Father with the girls. The case plan required both parents to complete a drug and alcohol assessment and follow all recommendations, to obtain and maintain stable housing free of any physical hazards, drugs, and drug paraphernalia, to obtain employment or financial stability for no less than three months, and to complete a parenting education course of their choice. For a while, Mother complied with the case plan and tested clean each time she took a drug test at work. However, she was removed from the case plan in early 2012 after she was court-ordered into a drug and alcohol treatment facility. Mother entered an inpatient program at Stepping Stones in Portsmouth, Ohio in February 2012 and completed it in October 2012, at which point she was reinstated to the case plan. Mother also completed a drug rehabilitation program at Mary Haven in February 2013. Mother's son, L.R., was born while Mother was attending the Stepping Stones program.

{¶ 6} In early September 2013, the Agency moved the juvenile court to modify disposition as Maternal Grandfather and his wife were no longer able to care for H.F., Em.F., El.F., and S.F. On September 26, 2013, the four girls were placed in the temporary custody of the Agency. Mother continued to work on her case plan requirements and for a few months, consistently tested negative for drugs. However, Mother tested positive for amphetamine and methamphetamine in February 2014, for Oxycodone in March 2014, and for cocaine, methamphetamine, and buprenorphine in April 2014. Pseudoephedrine tablets and a mason jar with white residue that field-tested positive for methamphetamine were also recovered from Mother's van in February 2014.

{¶ 7} Consequently, on April 22, 2014, the Agency filed a complaint alleging that Mother's son, L.R., was abused, neglected, and dependent. The complaint stated that Mother "continues to test positive for drugs under the cases for the child's siblings" and that she was "currently on a treatment in lieu of conviction plan through the Clinton County Court

of Common Pleas." On April 24, 2014, the juvenile court granted temporary custody of L.R. to the Agency. On July 24, 2014, the juvenile court adjudicated L.R. dependent.

{¶ 8} Given Mother's substance abuse issues, an amended case plan was implemented, requiring Mother to complete a new drug and alcohol assessment and follow all recommendations, to complete a psychological assessment and follow all recommendations, and to obtain and maintain employment. While Mother complied with some requirements of the case plan, she tested positive for methamphetamine and amphetamine while attending an outpatient 18-week drug treatment program at Talbert House.

{¶ 9} On September 23, 2015, the Agency moved for permanent custody of H.F., Em.F., El.F., S.F., and L.R. The following month, a semiannual administrative review indicated that Mother (1) had successfully completed her drug and alcohol treatment through Talbert House in April 2015, (2) within the last review period, had tested positive for drugs six out of eight times, (3) had missed many scheduled mental health counseling appointments, (4) reportedly had a job but did not provide proof of employment, and (5) had missed several sessions of a parenting program.

{¶ 10} At the request of the children's guardian ad litem, the juvenile court conducted an in camera interview of the four girls, H.F., Em.F., El.F., and S.F. (who were then 14, 11, 9, and 7 years old). A permanent custody hearing was held on January 27, 2016. Mother, Father, and a protective unit supervisor for the Agency testified at the hearing. At the time, Mother was incarcerated in Greene County, Ohio for a drug-related offense and appeared at the hearing from the Clinton County Jail. In her prehearing report, the guardian ad litem recommended that permanent custody of all five children be granted to the Agency.

{¶ 11} On February 18, 2016, the juvenile court found by clear and convincing evidence that H.F., Em.F., El.F., S.F., and L.R. had been in the temporary custody of the Agency for 12 or more months of a consecutive 22-month period, and that it was in the best

interest of the five children to permanently terminate the parental rights of Mother and Father and grant permanent custody to the Agency. The juvenile court also found that both parents had abandoned the children, and that the children could not be placed with either parent within a reasonable period of time and should not be placed with the parents.

{¶ 12} Mother appeals, raising two assignments of error which will be addressed together.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FINDING APPELLANT ABANDONED THE CHILDREN.

{¶ 15} Assignment of Error No. 2:

{¶ 16} THE TRIAL COURT'S DECISION GOES AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 17} In her first assignment of error, Mother argues the juvenile court erred in finding she has abandoned H.F., Em.F., El.F., S.F., and L.R. because there is no evidence she failed to visit or maintain contact with the children for more than 90 days. In her second assignment of error, Mother generally argues that the juvenile court's decision granting permanent custody to the Agency was not in the best interest of H.F., Em.F., El.F., S.F., and L.R., and that such finding was against the manifest weight of the evidence.

{¶ 18} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re J.H.*, 12th Dist. Clinton Nos. CA2015-07-014 and CA2015-07-015, 2016-Ohio-640, ¶ 21.

{¶ 19} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if the court makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D).

{¶ 20} Second, the court must find that any of the following apply: (1) the child is abandoned, (2) the child is orphaned, (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e). Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 22.

{¶ 21} Mother first disputes the juvenile court's finding, under R.C. 2151.414(B)(1)(b), that she abandoned H.F., Em.F., El.F., S.F., and L.R. A child is "presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C). A review of the record shows, and the state agrees, that no evidence was presented at the permanent custody hearing that Mother failed to visit or contact the children for more than 90 consecutive days. In addition, while the state successfully argued that Father has abandoned the children, it did not argue that point with regard to Mother. The juvenile court, therefore, erred in finding that Mother abandoned the

children.[2]   Accordingly, we vacate the juvenile court's finding that Mother has abandoned H.F., Em.F., El.F., S.F., and L.R.

{¶ 22} Such error, however, does not require reversal of the juvenile court's grant of permanent custody to the Agency as the juvenile court found an alternate, independent ground for terminating Mother's parental rights under the second prong of the permanent custody test. In addition to its abandonment finding, the juvenile court also found that H.F., Em.F., El.F., S.F., and L.R. had been in the temporary custody of the Agency for more than 12 months of a consecutive 22-month period as of the date the Agency filed its permanent custody motion. R.C. 2151.414(B)(1)(d). Mother does not dispute this finding. The record supports this finding. The second prong of the permanent custody test is therefore satisfied. *In re J.N.*, 9th Dist. Summit No. 23067, 2006-Ohio-2557, ¶ 11-12 (trial court's erroneous abandonment finding does not require reversal of its permanent custody determination where trial court also found the child satisfied the "12 of 22" requirement); *In re Williams*, 5th Dist. Stark No. 2006CA00270, 2007-Ohio-1137, ¶ 32.

{¶ 23} Mother also disputes the juvenile court's finding that granting permanent custody of H.F., Em.F., El.F., S.F., and L.R. to the Agency was in the children's best interest. Specifically, Mother argues that given her ability to succeed with case plans when she is sober, and the fact that prior to the permanent custody hearing, Maternal Grandmother and other family members expressed to the Agency their interest in caring for the children, the juvenile court erred in granting permanent custody to the Agency.

{¶ 24} When considering the best interest of a child in a permanent custody hearing,

---

2. We note that in its best interest analysis under the first prong of the permanent custody test, the juvenile court found that R.C. 2151.414(E)(1) applied here because Mother and Father had abandoned H.F., Em.F., El.F., S.F., and L.R. Although this finding is erroneous with regard to Mother as there is no evidence Mother has abandoned the children, it does not seem the juvenile court placed great weight on the finding of abandonment in its best interest determination, other than to note it briefly in one sentence in its entry. "Thus, any error in the [juvenile] court's finding of abandonment had only minimal impact on its weighing of the best interest factors." *In re J.N.*, 9th Dist. Summit No. 23067, 2006-Ohio-2557, ¶ 14.

the juvenile court is required under R.C. 2151.414(D)(1) to consider all relevant factors, including, but not limited to (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-town providers, and any other person who may significantly affect the child, (b) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, (c) the custodial history of the child; (d) the child's need for a legally secured permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency, and (e) whether any of the factors in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child.

{¶ 25} With regard to R.C. 2151.414(D)(1)(a), the juvenile court found that the four girls, H.F., Em.F., El.F., and S.F., first entered the care of the Agency in May 2011. Subsequently, the girls were placed in the temporary custody of Maternal Grandmother until August 2011, were then placed in the temporary custody of Maternal Grandfather until September 2013, at which point the Agency was granted temporary custody of the girls. Initially, the girls were placed together in the same foster family. However, because of the girls' individual problems, it was necessary that they be separated. At the time of the permanent custody hearing, the oldest child, H.F., was in a group home which has proved to be "a very good thing for her"; Em.F. was still with the original foster family; and El.F. and S.F. lived together with another foster family.

{¶ 26} With regard to L.R., the juvenile court found that he entered the temporary custody of the Agency in April 2014 (he was then 20 months old). At the time of the permanent custody hearing, L.R. was three years old and living with his second foster family. Throughout the proceedings, Mother has contacted the children on birthdays, holidays, and Christmas. The record shows that Mother attended 25 out of 49 scheduled visits between February 2014 and December 2014, and 31 out of 52 scheduled visits in 2015. Mother admitted some of the visits were missed because she was incarcerated. At the time of the

permanent custody hearing, Mother was incarcerated in the MonDay Correctional Institute in Dayton, Ohio for at least six months due to her drug addiction, was unavailable to parent, and did not have a job or home.

{¶ 27} Mother testified she was hoping to get more time to comply with her case plan and had finally realized how her actions and inactions had been selfish to the children. Mother stated that while she was incarcerated, Maternal Grandmother or Maternal Grandfather could take care of the children, and that they had, in fact, expressed their interest in caring for the children to the Agency. Mother stated that she would have a job upon release and believed she would have no trouble finding housing. With regard to her substance abuse, Mother admitted that her past relapses were caused by her failure to follow steps, get a sponsor, and see a counselor.

{¶ 28} With regard to R.C. 2151.414(D)(1)(b), the juvenile court conducted an in camera interview of the four girls. The juvenile court found that the girls each expressed their desires and that they were "quite impressive." The juvenile court also noted the guardian ad litem's recommendation that permanent custody of the four girls and L.R. be granted to the Agency.

{¶ 29} In her report, the guardian ad litem noted that (1) both parents had continuously and repeatedly failed to substantially remedy the conditions that had caused the children to be removed from the parents' care, (2) the children were in "need of permanency in their lives instead of spending their youth waiting for the parents to get it together," and (3) granting permanent custody to the Agency would give the children "an opportunity to experience stability, continuity, and a loving environment where all their daily needs are met."

{¶ 30} With regard to R.C. 2151.414(D)(1)(c), the juvenile court found that H.F., Em.F., El.F., S.F., and L.R. had been in the custody and care of the Agency for more than 12 months of a consecutive 22-month period.

{¶ 31} With regard to R.C. 2151.414(D)(1)(d), the juvenile court found that while Mother had worked on the requirements of her case plans, she had not successfully complied with the case plans and was unable to resolve her problems in a timely manner, especially with regard to her substance abuse issue as demonstrated by her actions and inactions. The juvenile court further found that the children's need for a legally secure placement could not be achieved without a grant of permanent custody to the Agency.

{¶ 32} At the time the Agency filed its permanent custody motion, H.F., Em.F., El.F., and S.F. had been subject to the Agency's supervision for over four years and in the Agency's temporary custody for two years; L.R. had been in the Agency's temporary custody for 17 months. During that time, the girls were shuffled from Maternal Grandmother's home to Maternal Grandfather's home to foster homes, L.R. was placed in two foster homes, and H.F. is now living in a group home.

{¶ 33} The children were all removed from Mother's home due to Mother's substance abuse. Throughout the proceedings, protective supervision by the Agency, and subsequently the Agency's temporary custody of the children were continued several times in an effort to give Mother ample time to comply with her case plans so that she could be reunified with the children. The record shows that Mother functions well and meets the requirements of her case plans when she is sober. However, the record also shows that while Mother may successfully complete drug rehabilitation programs and obtain sobriety, she is either incapable or unwilling to maintain sobriety. As the guardian ad litem's report stated, "with drugs available to her, mother chose to use the drugs." That point was plainly demonstrated at the permanent custody hearing: at the time, Mother was incarcerated in Greene County for at least six months for a drug-related offense.

{¶ 34} Mother now claims that unlike her prior drug rehabilitation programs, she has finally found a program that meets the goals of her case plan when she entered the lockdown

treatment facility in Greene County. Whether Mother can obtain *and permanently maintain sobriety* upon her release from the facility is speculative. "To anticipate the future, however, is at most a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision[,] not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]." *In re R.S.-G.*, 4th Dist. Athens No. 15CA2, 2015-Ohio-4245, ¶ 53. "The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm." *Id.*

{¶ 35} Mother also claims that Maternal Grandmother and other family members have expressed their interest in caring for the children to the Agency. However, no motion for legal custody of the children was filed by a relative. In her report, filed a month before the permanent custody hearing, the guardian ad litem stated there were no relatives able or willing to take custody of the children as Maternal Grandmother had opted out of her offer to take custody of two of the children, and Maternal Grandfather had expressed interest in taking custody of two of the girls but had not contacted the Agency with a firm commitment.

{¶ 36} In light of the foregoing, and after a thorough review of the record, we find that the juvenile court's decision granting permanent custody to the Agency is in the best interest of H.F., Em.F., El.F., S.F., and L.R., and not against the manifest weight of the evidence. *See In re S.S.*, 2d Dist. Miami No. 2011-CA-07, 2011-Ohio-5697 (upholding a grant of permanent custody in light of mother's total lack of progress on case plan services and her failure to become and remain drug free); *In re A.M.L.*, 12th Dist. Butler No. CA2013-01-010, 2013-Ohio-2277, ¶ 32. A juvenile court "is not required to deny [a] permanent custody motion simply based upon the groundless speculation that the mother might successfully complete her drug treatment, * * * and remain drug-free." *In re J. C.*, 4th Dist. Adams No. 07CA834, 2007-Ohio-3783, ¶ 25. A parent is afforded a reasonable, not an indefinite, period of time to remedy the conditions causing the children's removal. *In re A.M.L.* at ¶ 32.

{¶ 37} In addition, courts are not required to favor a relative if, after considering all the relevant factors under R.C. 2151.414(D)(1), it is in the child's best interest to grant permanent custody to a children services agency. *In re Keaton*, 4th Dist. Ross Nos. 04CA2785 and 04CA2788, 2004-Ohio-6210, ¶ 61. "A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security." *Id.*; *In re D.K.W.*, 2014-Ohio-2896 at ¶ 37.

{¶ 38} Mother's second assignment of error is accordingly overruled. Mother's first assignment of error is well-taken in that there is no evidence supporting the juvenile court's finding Mother has abandoned H.F., Em.F., El.F., S.F., and L.R. Nonetheless, we affirm the juvenile court's judgment because the record supports the juvenile court's alternate, independent finding that the children had been in the temporary custody of the Agency for more than 12 months of a consecutive 22-month period as of the date the Agency filed its permanent custody motion.

{¶ 39} Judgment affirmed as modified.

S. POWELL and RINGLAND, JJ., concur.