OPINION *Page 2 
{¶ 1} Mary Scullion NKA Doyle ("mother") appeals the September 22, 2006 Judgment Entry, and the September 22, 2006 Findings of Fact and Conclusions of Law entered by the Stark County Court of Common Pleas, Juvenile Division, which terminated her parental rights, privileges and responsibilities in regard to her three minor children, and granted permanent custody of the children to appellee Stark County Department of Job and Family Services ("the department").
 STATEMENT OF THE CASE AND FACTS {¶ 2} On June 23, 2005, the department filed a Complaint, alleging Cheyenne Scullion (DOB 1/1/99), Mitchell Scullion (DOB 4/8/00), and Matthew Scullion (DOB 4/8/00) were dependent and/or neglected children, and seeking temporary custody of said children.[1] The department based the complaint upon information mother and the children were homeless, and mother had resumed contact with Gregory Doyle, the alleged father of Matthew and Mitchell, who has an extensive criminal history. Further, the children had been found with multiple bruises from being hit with a paddle. Mother and the children were residing with the maternal grandmother and grandfather. Maternal grandfather had a conviction for gross sexual imposition, and had been adjudicated a sexually oriented offender. In a separate prior investigation, the department had recommended no unsupervised contact between the children and the maternal grandfather. Because maternal grandmother considers Doyle "a criminal bum", she asked Doyle and mother to leave the residence. As a result, mother and *Page 3 
Doyle resided in a tent in the maternal grandparents' backyard. The children spent equal time between the house and the tent.
 {¶ 3} Following a shelter care hearing, the trial court placed Cheyenne, Mitchell, and Matthew in the temporary custody of the department. On September 13, 2005, mother stipulated and the trial court found the children to be dependent and continued temporary custody with the department.
 {¶ 4} The trial court approved and adopted mother's case plan, which included undergoing a psychological evaluation, attending Goodwill Parenting classes, and obtaining and maintaining stable employment and housing. The department filed a Motion for Permanent Custody on April 24, 2006. The trial court conducted a hearing on that motion on September 7, 2006.
 {¶ 5} LaShawn Hye, the ongoing family service worker assigned to the case testified regarding mother's failure to remedy the initial concerns which caused the removal of the children from her home. Hye also testified mother had not seen the children since March, 2006, and was currently incarcerated, serving a four year sentence on a burglary conviction. The department presented and the trial court admitted a certified copy of mother's sentencing entry. The department requested the court find the children abandoned pursuant to R.C.2151.414(B)(1)(b). The trial court ultimately made such finding.
 {¶ 6} The trial court proceeded to the best interest portion of the hearing. The department again called LaShawn Hye. Hye testified the children are caucasian and do not have significant physical or medical problems. Hye continued, however, the children do suffer some cognitive learning issues and developmental delays, and are *Page 4 
receiving services. The three children are currently placed together with a foster family, who are considering adoption. Matthew and Mitchell were making a positive transition and appeared to be doing well. Cheyenne was more resistant to the structure of the foster family's home. According to Hye, Cheyenne's therapist believes such behavior is the result of Cheyenne's fear of getting close to people. Cheyenne is also easily frustrated, which results in her behaving inappropriately. Cheyenne receives weekly counseling at the Children's Network.
 {¶ 7} Hye stated he believed granting permanent custody of the children to the department was in the children's best interest as it will provide them with a chance for stability, which has always been a major issue for them. Hye added the children need an opportunity to thrive and should not have to worry about whether they have a roof over their heads or food on the table. Hye concluded mother had not been able to demonstrate the ability to provide the necessary stability to the children.
 {¶ 8} In lieu of calling Dr. Cassie Hornbeck, Cheyenne's therapist, the doctor's report was admitted. The trial court asked the chidren's guardian ad litem if she had anything to add to her report. The guardian ad litem indicated her report summed up the situation "quite well."
 {¶ 9} Via Findings of Fact and Conclusions of Law filed September 22, 2006, the trial court found Cheyenne, Matthew, and Mitchell could not or should not be placed with their mother in the foreseeable future, and it was in the children's best interest to grant permanent custody to the department. The trial court also found mother had abandoned the children. Via Judgment Entry also filed September 22, 2006, the trial *Page 5 
court terminated mother's parental rights, privileges and obligations, and granted permanent custody to the department.
 {¶ 10} It is from this judgment entry and the trial court's findings of fact and conclusions of law mother appeals, raising the following assignments of error:
 {¶ 11} "I. THE TRIAL COURT'S FINDING THAT APPELLANT ABANDONED HER CHILDREN WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND THE TRIAL COURT ERRED BY PROCEEDING TO BEST INTERESTS BASED UPON ABANDONMENT.
 {¶ 12} "II. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 13} "III. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD [SIC] WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 14} This appeal is expedited and is being considered pursuant to App. R. 11.2(C).
 I {¶ 15} In her first assignment of error, mother contends the trial court's finding she abandoned her children was against the manifest weight and sufficiency of the evidence, and the trial court erred in proceeding to the best interest portion based upon such finding.
 {¶ 16} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, *Page 6 
competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. CE.Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 17} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 18} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 19} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial *Page 7 
court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 20} In the instant action, the trial court specifically found:
 {¶ 21} "17. Cheyenne Scullion has been abandoned by Mother and Father (Datz) pursuant to ORC 2151.414(B) (1 )(b).
 {¶ 22} "18. Mitchell and Matthew Scullion have been abandoned by Mother and Father (Doyle) pursuant to ORC 2151.414(B) (1 )(b)."
 {¶ 23} September 22, 2006 Findings of Fact and Conclusions of Law
 {¶ 24} Under R.C. 2151.011(C), abandonment is presumed after 90 days of no contact.
 {¶ 25} That statute reads:
 {¶ 26} "For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."
 {¶ 27} As set forth in the Statement of Case and Facts, supra, LaShawn Hye, the ongoing family case worker with the department, testified mother's last visit with the children was in March, 2006. The department filed its motion for permanent custody on April 24, 2006. Mother argues because 90 days had not passed between her last visit and the filing of the motion for permanent custody, the trial court's finding of abandonment was against the manifest weight and the sufficiency of the evidence. In *Page 8 
support of her position, mother relies upon In re: C.W.,104 Ohio St.3d 163, 2004-Ohio-6411.
 {¶ 28} In In re: C.W., the Ohio Supreme Court held:
 {¶ 29} "[B]efore a public children-services agency or private child-placing agency can move for permanent custody of a child on R.C.2151.414(B)(1)(d) grounds [the 12 of 22 provision], the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22-month period. In other words, the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)." Id.
 {¶ 30} The department concedes 90 days had not passed from the date of mother's last visit with the children to the date of the filing of the motion for permanent custody (April 24, 2006), but maintains the specific holding of In re: C.W. should be limited to the "12 of 22" provision. We agree with mother as the issue relates to the facts of the instant case. The logical extension of In re: C.W. requires a finding a parent has failed to visit or maintain contact with the child for a period of ninety days before an agency moves for permanent custody on abandonment grounds. Although the department did not allege abandonment per se as one of the grounds for moving for permanent custody, the department cited mother's failure to visit or maintain contact with the children as one of the reasons permanent custody ought to be granted. We recognize failure to visit or maintain contact with the children is a factor in considering whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (R.C. 2151.414(E)), and further note those *Page 9 
same facts can support a theory of abandonment. Although the department did not specifically allege abandonment as a separate grounds in its motion, such ground was implicitly asserted at trial as evidenced by the trial court's separate finding of abandonment. The trial court appears to have based its finding of abandonment upon the 90 day presumptive rule. We recognize situations may exist in which abandonment can be established without the passage of 90 days. However, before a department initiates a motion for permanent custody on the grounds of presumed abandonment, we find 90 days must have passed without visit or contact before such motion can be initiated. Accordingly, we find the trial court's finding of abandonment was against the manifest weight and sufficiency of the evidence.
 {¶ 31} Although we agree with mother the trial court's finding of abandonment was not supported by the evidence, we find such error does not require reversal of the permanent custody determination under the two-issue rule. The trial court found an alternate, independent ground for terminating parental rights. The trial court found:
 {¶ 32} "22. * * * Cheyenne Scullion, Mitchell Scullion and Matthew Scullion cannot and/or should not be placed with either parent at this time or in the foreseeable future." September 22, 2006 Findings of Fact and Conclusions of Law.
 {¶ 33} Mother has not directly assigned error with this finding. Accordingly, we affirm the trial court's decision to proceed to the best interest portion of the hearing.
 {¶ 34} Mother's first assignment of error is sustained in part and overruled in part.
 II {¶ 35} In her second assignment of error, mother contends she was denied effective assistance of trial counsel. Specifically, mother asserts trial counsel was ineffective as he failed to ask any questions or make any statements regarding the fact *Page 10 
mother was scheduled for a judicial release hearing. This issue was particularly important as the trial court found mother was incarcerated at the time of the filing for permanent custody and would not be able to care for her children for at least 18 months after the filing of the motion.
 {¶ 36} "The two-part test for ineffective assistance of counsel used in criminal cases, announced in Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, applies in actions by the state to force the permanent, involuntary termination of parental rights. Jones v. Lucas Cty. Children Services Bd. (1988),46 Ohio App.3d 85, 86, 546 N.E.2d 471. A claim for ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness.Strickland, supra; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373." In re: Utt Children, Stark App. No. 2003CA00196, 2003-Ohio-4576.
 {¶ 37} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any give case, a strong presumption exists counsel's conduct fell within the wide range of reasonable professional assistance. Id.
 {¶ 38} In order to warrant a reversal, the appellant must additionally show she was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation *Page 11 
sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v.Carter, 72 Ohio St.3d 545, 558, 1995-Ohio-104, citing Lockhart v.Fretwell (1993), 506 U.S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180.
 {¶ 39} Assuming, arguendo, trial counsel's performance fell below an objective standard of reasonable representation, we find mother cannot satisfy the second prong of the Strickland test. The record before this Court does not show mother's judicial release was anything more than a possibility. Furthermore, the trial court had as an exhibit a copy of the judgment entry of conviction which mentions the possibility of judicial release. As such, the fact was before the court even without questioning or statements from mother's counsel. We cannot conclude mother was prejudice by trial counsel's failure to ask questions or make statements regarding the upcoming judicial release hearing.
 {¶ 40} Mother's second assignment of error is overruled.
 III {¶ 41} In her final assignment of error, mother contends the trial court's finding it was in the children's best interest to grant permanent custody to the department was against the manifest weight and sufficiency of the evidence.
 {¶ 42} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of *Page 12 
the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 43} LaShawn Hye testified the three siblings do not have any physical or medical problems. Although all three children were involved in counseling, Mitchell and Matthew had been terminated due to their improvements. Only Cheyenne continued involvement with a therapist. Hye stated the children were in a home interested in adopting the entire group. The twins were making a positive transition to the placement, but Cheyenne was experiencing some difficulty due to her emotional and psychological issues. The parties stipulated to the admission of the report of Casey Hornbeck of Northeast Ohio Behavioral Health, who conducted an assessment of the children. Hornbeck's report detailed the severe trauma and abuse the children suffered at the hands of mother. Hornbeck reported improvement in the children since their placement in foster care. The trial court also admitted the guardian ad litem's report, which recommended permanent custody of the children be granted to the department.
 {¶ 44} Based upon the foregoing, and the entire record in this matter, we find the trial court's determination it was in the best interest of Cheyenne, Mitchell and Matthew to grant permanent custody to the department was not against the manifest weight or sufficiency of the evidence.
 {¶ 45} Mother's third assignment of error is overruled. *Page 13 
 {¶ 46} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
 Hoffman, J. Gwin, P.J. concurs, Edwards, J. concurs separately *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
Costs assessed to appellant.
[1] Kristofer Datz is the father of Cheyenne, Gregory Doyle is the father of Mitchell and Matthew. Neither father is a party to this appeal. *Page 14