[Cite as *In re L.M.R.*, 2017-Ohio-158.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| L.M.R., DEPENDENT CHILD | : | |
| | : | **CASE NO. 2016-L-096** |

Appeal from the Lake County Court of Common Pleas, Juvenile Division, Case No. 2014 AB 01120.

Judgment: Affirmed.

*Christopher J. Boeman*, P.O. Box 583, Willoughby, OH 44096 (For Appellant, Christopher Robinson).

*Stephanie G. Snevel*, Special Prosecutor, P.O. Box 572, Wickliffe, OH 44092 (For Appellee, Lake County Department of Job and Family Services).

*Susan K. Jankite*, Susan Jankite Co., L.P.A., 1253 Arlington Road, Lakewood, OH 44107 (Guardian ad litem).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Christopher Robinson, appeals the entry permanently terminating his parental rights regarding his son, L.M.R. For the following reasons, we affirm.

{¶2} The Lake County Department of Job & Family Services ("the Department") filed a complaint in June of 2014 alleging L.M.R.; his older half-sister, C.S.; and his younger brother, D.L.R. to be dependent under R.C. 2151.04. L.M.R. was born April 30, 2011 and was five years old at the time of the hearing. All three children have the same mother. Appellant is not C.S.'s father and this opinion does not address the facts concerning the termination of her parents' rights.

{¶3} At the time the dependency complaint was filed, appellant was living with the children and their mother in her Painesville, Ohio home. Appellant and L.M.R.'s mother never married. The dependency complaint alleges in part that C.S. engaged in sexual activity with L.M.R. and that D.L.R. tested positive for marihuana and cocaine at birth.

{¶4} A Lake County Department of Job and Family Services licensed social worker, Jesica Ray, began working with the children in the summer of 2014. Ray developed a case plan for the family when they all resided together. The case plan recommended that L.M.R. and C.S. complete mental health evaluations and directed their parents to follow the recommendations. It also directed their mother and appellant to provide adult supervision for the children at all times; for mother to obtain an alcohol and drug assessment as well as a mental health evaluation and to follow all the recommendations; and for appellant to complete a mental health evaluation and follow its recommendations. Ray included a mental health requirement for appellant because he explained to her that he had experienced trauma in his life that he coped with by using marijuana.

2

**{¶5}** From August 2014 through December 2014, appellant met with a counselor twice. His October 2014 drug screen was positive for marijuana and cocaine. Appellant missed his following drug screen in November 2014. Appellant explained that he missed his appointments and screening because he had difficulties with his counselor and lacked transportation. At about this same time, appellant moved out of L.M.R's mother's residence and began intermittently staying with friends and coworkers up to the time of the permanent custody hearing.

**{¶6}** In November 2014, the Department filed a motion to show cause against appellant averring that he failed to comply with his mental health requirements since he failed to see a counselor since July 2014. Appellant did not appear at the hearing and was found in contempt.

**{¶7}** Appellant was also required to obtain a new substance abuse assessment based on his positive test results. He received new recommendations from a new counselor and then again switched counselors. Appellant met with his third counselor a few times, but he told Ray that he had problems scheduling with her. Thereafter, appellant never met with his fourth scheduled counselor, who testified that he missed the two or three scheduled addiction assessments. Appellant then sporadically attended counseling sessions at Beacon Health from January through June of 2015.

**{¶8}** In June of 2015, Ray appeared for an unscheduled visit at mother's home and there was marijuana smoke "billowing out of the house." The Department subsequently sought emergency temporary custody of the children based on mother's impending eviction from her home, her failure to comply with her case plan

3

requirements, and several allegations regarding the children's safety.  All three children were temporarily placed with appellant's sister.

{¶9} Appellant was again found in contempt of court based on his failure to submit to the June 2015 court-ordered drug screening.  Appellant informed his case worker that he was working at the time and having a lot of transportation issues.  He was provided bus passes to go to his counseling sessions, but he did not always use these passes for transportation to counseling.  The case reviews indicate that appellant failed to follow through with his recommended services and failed to follow through on obtaining the recommended services for L.M.R.

{¶10} The Department again filed for emergency temporary custody since appellant's sister was unable to continue caring for all three children, but she continues to care for D.L.R.  Appellant did not have a residence at the time, and he was allegedly using drugs at the time.  Thus, the guardian ad litem did not recommend placing the children with him.  As a result, C.S. and LM.R. were placed in foster care.

{¶11} Appellant visited L.M.R. while the Department had temporary custody, but he canceled numerous visits based on his job, and he missed one appointment when he was in jail.  Appellant advised Ray that he shared a ride with his coworkers and was unable to leave his employment to attend his weekly visits with L.M.R.  Ray testified that Appellant was not case plan compliant from July through December of 2015.  He was likewise not case plan compliant from January 2016 to the date of the hearing, August 10, 2016.  His attendance at his counseling sessions was intermittent.

{¶12} On May 4, 2016, the Department filed a motion for permanent custody of L.M.R. and C.S. alleging they were abandoned.  The motion also alleged that the

4

children could not be placed with their parents within a reasonable time or should not be placed with their parents because neither parent had a stable residence, and neither satisfied their case plan recommendations.

{¶13} Following a hearing, the trial court ordered L.M.R. and C.S. to be committed to the permanent custody of the Department and divested appellant and L.M.R.'s mother of all of their parental rights.

{¶14} Appellant asserts two errors on appeal:

{¶15} "The trial court committed reversible err by overruling Father's second oral motion for a continuance of the permanent custody hearing.

{¶16} "The trial court committed reversible err by determining that by clear and convincing evidence L.R. was an abandoned child under R.C. 2151.011(C)."

{¶17} Appellant first challenges the trial court's denial of his second motion to continue the permanent custody hearing.

{¶18} "It is well-recognized that a parent must be afforded every procedural and substantive protection that the law allows before parental rights may be terminated. *In re J.Z.,* [10th Dist. Franklin No. 05AP-8, 2005-Ohio-3285,]*,* at P9; *In re Hayes*, [79 Ohio St.3d 46, 679 N.E.2d 680 (1997), reconsideration denied, 79 Ohio St.3d 1492, 683 N.E.2d 793], at 48, quoting *In re Smith,* [77 Ohio App. 3d 1, 16, 601 N.E.2d 45, (1991)] at 16. Moreover, '[d]ue process includes a hearing upon adequate notice, assistance of counsel, and under most circumstances, the right to be present at the hearing.' *In re J.Z.,* at P9, citing *In re Thompson* (Apr. 26, 2001), Franklin App. No. 00AP-1358, 2001 Ohio App. LEXIS 1890." *In re M.W.,* 10th Dist. Franklin No. 07AP-529, 2007-Ohio-6506, ¶79.

{¶19} Upon addressing the denial of a continuance, appellate courts employ an abuse of discretion standard since continuances are "'entrusted to the broad, sound discretion of the trial court judge.'" *Id.* at ¶82 quoting *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078, syllabus (1981).

{¶20} "The term 'abuse of discretion' is one of art, 'connoting judgment exercised by a court, which does not comport with reason or the record.' *State v. Underwood*, 11th Dist. No. 2008-L-113, 2009 Ohio 2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678, 148 N.E. 362 (1925). * * * [A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.' *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010 Ohio 1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev. 2004) 11. When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error * * *. By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *State v. Anderson*, 11th Dist. Geauga No. 2011-G-3044, 2012-Ohio-4203, ¶15 quoting *State v. Beechler,* 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶67.

{¶21} "'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" *Unger* at 67, quoting *Unger* v. *Sarafite*, 376 U.S. 575, 589 (1964).

6

{¶22} "Weighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.

{¶23} "In evaluating a motion for a continuance, a court should note, *inter alia*: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." (Citation omitted.) *Unger*, 67 Ohio St.2d 65, 67-68.

{¶24} Appellate courts must examine the "*Unger* facts" in each case and upon balancing these factors, determine whether the trial court abused its discretion in denying a continuance. *In re Kutcher*, 7th Dist. Belmont No. 02BE58, 2003-Ohio-1235, ¶26.

{¶25} Here, the permanent custody hearing was scheduled for two consecutive days commencing August 10, 2016. At the beginning of the first day, L.M.R.'s mother consented and agreed to the Department's motion for permanent custody for both children, and she was excused from the remainder of the hearing.

{¶26} Appellant did not appear. Instead, appellant's counsel asked for a continuance of indefinite duration stating appellant had the date of the hearing wrong and was working. Second, counsel stated appellant wanted additional time to secure housing and have an opportunity to allow the guardian ad litem to inspect and approve

his home. Counsel did not state how long it would take appellant to secure housing or where he was in the process.

{¶27} In response, the court consulted the guardian ad litem as to whether she needed additional time to investigate, and she responded, "based on my investigation, my interviews with the children, I'm not comfortable with granting a continuance. I feel these parties have had plenty of time and notice." Thereafter the court denied the motion stating, "this is a pretty serious event and I think that I'd miss a day of work. * * * [Father has] been validly served, notified, and signed for the document to be here today."

{¶28} The state then presented its case, concluding on the first day. The Department presented three witnesses. The guardian ad litem for both children summarized her findings that it is in the children's best interest to be placed in the custody of the Department. She explained that they need consistency and hands-on follow through, which was lacking in their lives before their removal from their parents. Both children also expressed a desire for permanency, which their current foster-to-adopt mother was providing.

{¶29} At the conclusion of the Department's case, appellant's counsel renewed his motion to continue the hearing and asked the court to resume the next morning. Counsel told the court that during the in camera interview of the children, at approximately 11:30 a.m. on the first day of trial, that appellant contacted him. Counsel advised the court appellant stated that he was not present today because he was having bowel issues and he had a colonoscopy scheduled the next day. Nonetheless, appellant said he would be present in the morning for the second day of the hearing.

Counsel did not state that the colonoscopy was an emergency. The court denied this request without explanation.

{¶30} Instead, appellant was duly notified of the August 2016 hearing several months in advance and there is nothing evidencing that appellant's colonoscopy was emergent. Yet he scheduled a colonoscopy on the same date of his permanent custody hearing, and it is unclear whether the colonoscopy was causing appellant's bowel issues that in turn caused his absence or if his bowel issues necessitated the colonoscopy.

{¶31} Moreover, appellant's second stated reason for his continuance request is different, and unrelated to, the reason for his first continuance request. Appellant initially asked the court to continue the trial only a few hours earlier that same day because he was working, and appellant does not challenge the trial court's denial of this first continuance request. Accordingly, appellant's first assigned error lacks merit as the trial court's denial of appellant's second request for a continuance does not amount to an abuse of discretion.

{¶32} Appellant's second assigned error contends the trial court's determination that L.M.R. was an abandoned child is not supported by clear and convincing evidence.

{¶33} The rights of a parent to his or her child, while fundamental, "are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed." *In re Cunningham*, 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.*, 300 So. 2d 54, 58 (Fla. App. 1974). Although the termination of the rights of a natural parent should occur as a last resort, termination is expressly

9

authorized when necessary for the welfare of the child. *In re Wise*, 96 Ohio App.3d 619, 624, 645 N.E.2d 812 (1994), citing *In re Cunningham*, supra.

**{¶34}** Before a juvenile court can terminate parental rights and award permanent custody to the requesting agency, it must conduct a hearing and apply a two-pronged analysis. First, a court must find by clear and convincing evidence that one or more of the factors spelled out in R.C. 2151.414(B)(1)(a)-(e) applies. One of these factors is whether the child is abandoned. R.C. 2151.414(B)(1)(b).

**{¶35}** Second, upon finding one or more of these factors applicable, the court then must determine whether granting custody of the child to the agency is in the child's best interests pursuant to the analysis delineated in R.C. 2151.414(D).

**{¶36}** Appellant challenges the trial court's finding that L.M.R. was abandoned. He does not take issue with the court's best interest of the child determination.

**{¶37}** We review an order permanently terminating one's parental rights under the clear and convincing evidence standard and "will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." *In re J.S.E.,* 11th Dist. Portage Nos. 2009-P-0091, 2009-P-0094, 2010-Ohio-2412, ¶23, 25; *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985). The clear and convincing evidence standard requires that the evidence, "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. * * * Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact ha*d sufficient* evidence

10

before it to satisfy this burden of proof. * * * The determination *of the [trial] court should not be overturned unless it is unsupported by clear and convincing evidence."  *Id.*

{¶38}  Notwithstanding appellant's argument regarding abandonment, we affirm the trial court's permanent custody determination on other grounds.  *In re Williams Children*, 5th Dist. Stark No. 2006CA00270, 2007-Ohio-1137, ¶32; *In re Scullion Children*, 5th Dist. Stark No.  2006CA00308, 2007-Ohio-929, ¶31 (holding in part that the trial court's permanent custody determination could be affirmed on alternate grounds under the "two-issue rule.")  The trial court found an alternate and independent basis for terminating appellant's parental rights.

{¶39}  Specifically, the trial court held that the children cannot be placed with their parents at this time or within a reasonable time consistent with R.C. 2151.414(B)(1)(a).  Appellant does not challenge this determination, which is supported by the court's findings.  It found that appellant continues to struggle with substance abuse issues, has not been case plan compliant, does not have a stable residence, and cannot provide the permanency that L.M.R. needs.  Thus, we affirm the trial court's permanent custody determination on this basis.  Appellant's argument as to abandonment is moot.  App.R. 12(A)(1); *In re S.W.E.*, 8th Dist. Cuyahoga No. 91057, 2008-Ohio-4234, ¶7 (finding argument moot since clear and convincing evidence supported affirming on other grounds.)

{¶40}  Accordingly, the judgment of trial court is affirmed.


CYNTHIA WESTCOTT RICE, P.J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.


11

_____

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶41} I concur in the majority's disposition of the first assignment of error and in the decision to affirm the lower court's judgment. I write separately, however, to address the issue raised by Robinson in his second assignment of error, i.e., whether "[t]he trial court committed reversible error by determining that by clear and convincing evidence L.M.R. was an abandoned child under R.C. 2151.011(C)." *See* App.R. 12(A)(1)(c) ("a court of appeals shall * * *[,] [u]nless an assignment of error is made moot by a ruling on another assignment of error, decide each assignment of error and give reasons in writing for its decision").

{¶42} "For the purposes of [R.C. Chapter 2151], a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C).

{¶43} Robinson's caseworker testified that, to her knowledge, Robinson had not had "any contact" with L.M.R. from May 5 until the August 10 permanent custody hearing.

{¶44} The caseworker testified as follows regarding his failure to visit L.M.R.: And we had talked and [Robinson] reported that his work schedule doesn't allow him to visit during typical agency hours, so I made an attempt to try and offer him a later visit on Wednesday from 4:30 to 5:30, and again because of his transportation situation with work and him riding in with a bunch of other people and if he

12

leaves, everybody has to leave, he said he couldn't do Wednesday. And then Donna Scott and I were actually working together to see if we could set up a visit at Crossroads on Tuesdays, but our transporter unfortunately wasn't available that day, you know, to be able to make that.

**{¶45}** This testimony does not evidence that Robinson made any effort to visit or maintain contact with his son for a period of over ninety days. It was the caseworker who "made an attempt to try and offer him a later visit on Wednesday" and it was the caseworker who tried "to see if [they] could set up a visit at Crossroads." Accordingly, the juvenile court properly made the finding of abandonment.

**{¶46}** Even if evidence did exist that Robinson was attempting to arrange visitation through the caseworker, a parent's attempt to schedule visitation with his caseworker is not a substitute for communicating with his child for a period of over ninety days. Robinson might have been prevented from visiting L.M.R. due to scheduling or transportation issues, but there is nothing in the record to suggest he was unable to call his son, which act would have precluded a finding of abandonment. *In re Anderson*, 11th Dist. Trumbull No. 2004-T-0059, 2004-Ohio-5298, ¶ 33 (the presumption of abandonment was rebutted where "appellant presented evidence that she attempted to maintain contact with Ashley either via telephone or mail"); *compare In re C.B.*, 4th Dist. Highland No. 16CA22, 2016-Ohio-8293, ¶ 24 ("although the agency may have prevented Bates from physically visiting the child while he was in prison, there was no evidence that it prevented him from contacting his son in other ways, e.g., by telephone or mail"); *In re Wright*, 5th Dist. Stark No. 2003CA00347, 2004-Ohio-1094,

¶ 19 (the presumption of abandonment was not rebutted by the parent "sending a few letters to his attorney to let her know he was 'still interested in [his] son'").

{¶47} For the foregoing reasons, Robinson failed to rebut the presumption of abandonment and, therefore, the second assignment of error is without merit.