[Cite as *In re A.M.*, 2023-Ohio-671.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| IN THE MATTER OF: | CASE NOS. 2022-A-0090 |
| | 2022-A-0091 |
| A.M. AND A.M., | |
| DEPENDENT CHILDREN | |
| | Civil Appeals from the |
| | Court of Common Pleas, |
| | Juvenile Division |
| | |
| | Trial Court Nos. 2018 JC 00136 |
| | 2018 JC 00137 |

## O P I N I O N

Decided: February 28, 2023
Judgment: Affirmed

*Colleen M. O'Toole*, Ashtabula County Prosecutor; *Christopher R. Fortunato* and *Jessica Fross*, Assistant Prosecutors, 25 West Jefferson Street, Jefferson, OH 44047 (For Appellee, Ashtabula County Children Services Board).

*Judith M. Kowalski*, 333 Babbitt Road, Suite 323, Euclid, OH 44123 (For Appellant, Samuel Marshall, Jr.).

*Ariana E. Tarighati*, Law Offices of Ariana E. Tarighati, LPA, 34 South Chestnut Street, Suite 100, Jefferson, OH 44047 (Guardian ad Litem).


MARY JANE TRAPP, J.

{¶1}   In this consolidated appeal, appellant, Samuel Marshall, Jr. ("Mr. Marshall"), appeals the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, overruling his objections to the magistrate's decision and granting permanent custody of his two minor children to appellee, Ashtabula County Children Services Board ("ACCSB").

{¶2}    Mr. Marshall asserts two assignments of error, contending that (1) the trial court erred in finding that clear and convincing evidence supported granting permanent custody of the children to ACCSB, and (2) ACCSB failed to show that reasonable reunification efforts were made prior to seeking permanent custody of the children.

{¶3}    After a thorough review of the record and pertinent law, we find that clear and convincing evidence supported the trial court granting permanent custody of the children to ACCSB and its determination that ACCSB made reasonable reunification efforts.

{¶4}    Thus, we affirm the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division.

### Substantive and Procedural History

{¶5}    This appeal involves the two minor children of Mr. Marshall and Rebecca Henery ("Ms. Henery"), who were born, respectively, in 2013 and 2016.

{¶6}    This matter began on July 27, 2018, when ACCSB received a hotline call at 3 a.m. indicating that the children were present at the home of a babysitter where the police had been called. Ms. Henery reported that she was intoxicated and unable to pick up the children. Mr. Marshall arrived by taxi but appeared to be intoxicated. ACCSB took emergency temporary custody of the children at the scene. The trial court filed an ex parte order granting emergency temporary custody of the children to ACCSB.

{¶7}    On July 30, 2018, ACCSB filed a verified complaint for temporary custody, alleging neglect and dependency. The trial court held a shelter care hearing. Mr. Marshall and Ms. Henery appeared and stipulated to probable cause. The trial court continued

2

ACCSB's emergency temporary custody of the children. The court appointed a guardian ad litem ("GAL") for the children and counsel for Mr. Marshall and Ms. Henery.

{¶8} On August 15, 2018, ACCSB filed a case plan. The case plan stated that Mr. Marshall and Ms. Henery admitted to chronic alcohol use. There were concerns that it interfered with their parenting and that there was other substance abuse. The case plan required Mr. Marshall and Ms. Henery to maintain sobriety; to complete an age-appropriate parenting class; to complete drug and alcohol assessments, follow any and all recommendations, and comply with random screens; to complete mental health assessments and follow any and all recommendations; to obtain employment and provide proof of income; and to obtain adequate housing and provide proof of residency. Mr. Marshall was instructed to focus on "intimate partner violence."

{¶9} On August 28, 2018, the trial court held an adjudication hearing. Ms. Henery appeared with counsel. Mr. Marshall did not appear but was represented by counsel. The trial court adjudicated the children as dependent and dismissed the allegation of neglect.

{¶10} On September 25, 2018, the trial court held a disposition hearing. Mr. Marshall and Ms. Henery appeared and were represented by counsel. The trial court adopted the case plan and granted temporary custody of the children to ACCSB.

{¶11} On October 11, 2018, Ms. Henery, through counsel, filed a motion requesting the return of the children and for increased visitation. On January 24, 2019, the trial court held a semi-annual review hearing. Ms. Henery appeared with counsel. Mr. Marshall did not appear but was represented by counsel. The GAL reported that Ms. Henery had made progress on her case plan, that she obtained separate housing from

3

Mr. Marshall in Conneaut, and that she had completed weekend visits with the children. However, there were indications that Mr. Marshall had been violent, which caused Ms. Henery to leave her residence and stay with a friend. The GAL also reported that Mr. Marshall and Ms. Henery operated a business together on Main Avenue in Ashtabula. The trial court found that Ms. Henery's motion of October 11, 2018, was moot and prohibited Mr. Marshall from being present during her visitation time with the children.

{¶12} Ms. Henery moved into a house on Humphrey Avenue in Ashtabula. In March 2019, ACCSB placed the children in her care. According to ACCSB, however, the house presented a safety hazard due to electrical cords from an outside generator and the presence of multiple men associated with criminal activity.

{¶13} On July 18, 2019, ACCSB filed a motion to extend temporary custody. On July 29, 2019, the trial court held a hearing on this motion and an annual review. Mr. Marshall and Ms. Henery were present and represented by counsel. ACCSB reported that the children were currently residing with Ms. Henery on a trial basis but that it maintained temporary custody. Ms. Henery agreed with ACCSB's request to extend temporary custody for six months so that she could work on her case plan. Mr. Marshall also agreed to the extension, indicating that although he was not complying with his case plan, he was supportive of Ms. Henery's efforts to regain custody. Upon Ms. Henery's request, the trial court vacated its prior order prohibiting Mr. Marshall from being present during her visitation time with the children.

{¶14} After repeated requests from ACCSB, Ms. Henery agreed to move into an apartment at Beatitude House in Ashtabula and was put on a waiting list. In August 2019, Ms. Henery and the children stayed with Mr. Marshall at the Main Avenue store for a few

4

days.  ACCSB arrived, removed the children from Ms. Henery's care, and placed them in foster care.

{¶15}  On October 29, 2019, the trial court held a review hearing.  Mr. Marshall and Ms. Henery did not appear but were represented by counsel.  The GAL reported that Ms. Henery had completed a parenting class but had been inconsistent with her mental health treatment.  Courtney Santiago ("Ms. Santiago"), the parents' ACCSB caseworker, reported that Mr. Marshall had not completed the parenting class or substance abuse treatment requirements and that he and Ms. Henery appeared to be residing in the Main Avenue store.  All prior orders were maintained, and the children remained in the temporary custody of ACCSB.

{¶16}  On January 9, 2020, ACCSB filed a second motion to extend temporary custody.  On February 12, 2020, the trial court held a hearing on the motion.  Mr. Marshall did not appear but was represented by counsel.  Ms. Henery appeared late, after the presentation of evidence.  Ms. Santiago testified that Ms. Henery was officially residing at Beatitude House; however, on several occasions when Ms. Santiago attempted to visit, Ms. Henery was not present.  On multiple occasions, Ms. Santiago observed Ms. Henery's vehicle at the Main Avenue store.  In fact, the parents were involved in an argument in front of that location at 6 a.m. that morning.  Ms. Henery had also missed multiple appointments for her mental health treatment.  Ms. Santiago further testified that Mr. Marshall had attended one recent counseling appointment, was employed at a factory, and was residing in the Main Avenue store.  The trial court extended temporary custody for a six-month period.

Case Nos. 2022-A-0090, 2022-A-0091

**{¶17}** On April 14, 2020, the GAL filed a motion to suspend visitation. Ms. Henery had arrived unexpectedly at the home of the children's foster family on Easter evening, entered their screened-in porch, and would not leave. The trial court granted the GAL's motion and held a hearing on April 29, 2020. Ms. Henery was present via audio and was represented by counsel. Mr. Marshall did not appear but was represented by counsel. The GAL withdrew her motion, and Ms. Henery was ordered to have no direct or indirect contact with the foster family.

**{¶18}** On April 21, 2020, one of Ms. Henery's neighbors at Beatitude House called the police. According to the police report, Mr. Marshall discovered that Ms. Henery had male company, opened her window, and began shoving items off the ledge while yelling. On another occasion, Beatitude House prohibited a different male friend from visiting Ms. Henery because of his alleged criminal activity.

**{¶19}** On June 4, 2020, ACCSB filed a motion to modify its temporary custody to permanent custody.

**{¶20}** In August 2020, at the GAL's request, the trial court appointed counsel for the children based on the possibility that the GAL's recommendation may conflict with the children's wishes. The GAL subsequently filed two reports recommending that the trial court grant permanent custody to ACCSB.

**{¶21}** Following three continuances (two requested by Ms. Henery and one requested by ACCSB), the magistrate held an evidentiary hearing on April 14, 2021. ACCSB presented testimony from Captain Stephen Chase ("Capt. Chase") from the Ashtabula Fire Department (over the parents' objections); Attorney Jane Hawn Jackson, who previously served as the GAL; Ms. Henery; and Ms. Santiago. Ms. Henery testified

6

on her own behalf and presented exhibits. Mr. Marshall presented no witnesses or evidence. The children's foster mother made an unsworn statement, and the GAL's reports were admitted.

{¶22} Capt. Chase testified that the Main Avenue property was previously used by an insurance business. In 2018, he discovered it was filled with combustible materials, debris, trash, and extension cords. In 2019, he found evidence that the property was being used as a residence and took steps to have it ordered vacated. Despite these efforts, he observed Mr. Marshall and Ms. Henery on the property on multiple occasions. He informed Mr. Marshall during several conversations that he could not be there. In 2020, he again observed residential evidence at the property and took steps to have the electricity shut off. In 2021, the property was badly damaged in a fire, which the department determined had been intentionally set.

{¶23} Ms. Santiago testified that prior to June 2020 when the ACCSB filed its motion for permanent custody, Ms. Henery was not compliant with her case plan. Although Ms. Henery was officially residing at Beatitude House, Ms. Santiago only found her present at the residence during three out of ten visits. In addition, Ms. Henery was charged with felony burglary for the incident when she appeared unannounced at the foster family's home and was required to participate in mental health court. Ms. Henery also did not maintain steady employment or provide proof of income.

{¶24} After June 2020, Ms. Henery was compliant with her mental health and substance abuse treatment requirements and had obtained suitable housing; however, certain issues remained. For instance, Ms. Henery tested positive for amphetamines and methamphetamines. She refused to submit to a hair screen for the purpose of detecting

7

ongoing drug use. Ms. Henery also did not maintain steady employment and was observed at Mr. Marshall's residence within the last 30 days. She had recently reported to the police that Mr. Marshall "stabbed" the tire of her male friend's vehicle and left a note on her doorstep.

{¶25} Prior to June 2020, Mr. Marshall was not compliant with his case plan. He did not complete his parenting class or anger management class requirements; maintain steady employment; provide proof of income for the Main Avenue business; maintain suitable housing; or follow substance abuse treatment recommendations. After June 2020, Mr. Marshall moved into a new apartment but remained noncompliant with his other requirements. He tested positive for amphetamines and methamphetamines at the same time as Ms. Henery and also refused to submit to a hair screen.

{¶26} Ms. Santiago testified that prior to the pandemic, Mr. Marshall and Ms. Henery had supervised in-person visits with the children for one hour each week. Ms. Henery missed one of those visits. During the pandemic, the visits were virtual, and Mr. Marshall and Ms. Henery missed approximately half of them. Both interacted inappropriately at times during their visits by discussing the custody case.

{¶27} The children's foster mother stated that she had served in that capacity since August 27, 2019. Since that time, the children have experienced a stable and secure environment. The children do well in school, have many friends, and enjoy playing several sports. She has enrolled the children in counseling services. She stated that it is heartbreaking when Mr. Marshall and Ms. Henery do not show up for confirmed visits with the children. She indicated that she would like to provide a permanent home for the children and to provide ongoing contact with their biological parents and other relatives.

8

**{¶28}** Following the presentation of evidence, the magistrate heard argument from counsel. Relevant here, the children's counsel requested that ACCSB's motion be denied, arguing that ACCSB failed to meet its burden to show that the children cannot or should not be placed back in the home of either parent and that granting permanent custody to ACCSB is in the best interest of the children.

**{¶29}** On July 8, 2021, the magistrate filed a decision granting ACCSB's motion for permanent custody. It found, by clear and convincing evidence, that the children had been in ACCSB's temporary custody for a minimum of 12 out of the past 22 consecutive months; that ACCSB made reasonable efforts to prevent the removal of the children from their home, to eliminate the continued removal of the children from their home, or to make it possible for the children to return safely home; and that granting ACCSB's motion for permanent custody would serve the children's best interests.

**{¶30}** On July 16, 2021, the trial court filed a judgment entry approving and adopting the magistrate's decision and granting ACCSB's motion for permanent custody. Mr. Marshall and Ms. Henery both filed objections to the magistrate's decision, and Ms. Henery later filed supplemental objections following the filing of the hearing transcript.

**{¶31}** On October 14, 2022, the trial court filed a judgment entry overruling the parties' objections to the magistrate's decision and granting permanent custody of the children to ACCSB.

**{¶32}** Mr. Marshall filed two notices of appeal, which this court sua sponte consolidated. He raises the following two assignments of error:

{¶33} "[1.] The Ashtabula County Juvenile Court erred and abused its discretion in finding that clear and convincing evidence supported granting permanent custody of the subject children to [ACCSB].

{¶34} "[2.] The Ashtabula County Children's Services Board failed to show that reasonable reunification efforts were made prior to seeking permanent custody of the subject children."[1]

### Standard of Review

{¶35} It is well established that a parent's right to raise a child is an essential and basic civil right. *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). The permanent termination of parental rights has been described as "'the family law equivalent of the death penalty in a criminal case.'" *Id.*, quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991). Based upon these principles, the Supreme Court of Ohio has determined that a parent must be afforded every procedural and substantive protection the law allows. *Id.*

{¶36} While the rights of a parent to his or her child are fundamental, they are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed. *In re Cunningham*, 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979). Although the termination of the rights of a natural parent should occur as a last resort, termination is expressly authorized when necessary for the welfare of the child. *In re L.M.R.*, 11th Dist. Lake No. 2016-L-096, 2017-Ohio-158, ¶ 33.

---

1. Ms. Henery's consolidated appeals are pending before this court in case nos. 2022-A-0107 and 2022-A-0108.

Case Nos. 2022-A-0090, 2022-A-0091

{¶37} "An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." *In re Krems*, 11th Dist. Geauga No. 2003-G-2535, 2004-Ohio-2449, ¶ 36. "[C]lear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Id.* "Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985).

### Permanent Custody

{¶38} In his first assignment of error, Mr. Marshall contends that the trial court erred in finding that clear and convincing evidence supported granting permanent custody of the children to ACCSB.

{¶39} The trial court must apply a two-pronged analysis when ruling on a motion for permanent custody. *In re Krems* at ¶ 33. The trial court may grant permanent custody of a child to the movant if the court determines at the hearing, by clear and convincing evidence, that one of the factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies and that it is in the best interest of the child. R.C. 2151.414(B)(1).

{¶40} Under the first prong, the trial court determined that the children had "been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period." R.C. 2151.414(B)(1)(d). Mr.

11

Marshall suggests that this requirement was not met because Ms. Henery took care of the children between March 2019 and August 2019.

{¶41} We note that Mr. Marshall did not raise this argument in his objections to the magistrate's decision. "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Juv.R. 40(D)(3)(b)(ii). "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." Juv.R. 40(D)(3)(b)(iv).

{¶42} We find no plain error in the trial court's determination. "'Temporary custody' means *legal custody* of a child who is removed from the child's home, which custody may be terminated at any time at the discretion of the court * * *." (Emphasis added.) R.C. 2151.011(B)(57). "'Legal custody' means a *legal status* that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care * * *." (Emphasis added.) R.C. 2151.011(B)(21). "For the purposes of [R.C. 2151.414(B)(1)], a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home." R.C. 2151.414(B)(1). "The time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period

12

set forth in R.C. 2151.414(B)(1)(d)." *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 26.

{¶43} Here, ACCSB obtained temporary custody of the children when they were adjudicated dependent on August 28, 2018. ACCSB placed the children in Ms. Henery's *care* between March and August 2019. However, the trial court did not grant any legal status to Ms. Henery with respect to the children's custody. Therefore, for purposes of R.C. 2151.414(B)(1)(d), ACCSB maintained temporary custody of the children from adjudication through the filing of its motion for permanent custody on June 4, 2020.

{¶44} In addition, courts have explained that "R.C. 2151.414(B)(1)(d) anticipates that the applicable period of 12 months of temporary custody may accrue in portions." *In re M.Z.*, 9th Dist. Lorain No. 11CA010104, 2012-Ohio-3194, ¶ 10. "The statute calls for the accumulation of 12 months of temporary custody over the span of the 22 months directly prior to the filing of the motion for permanent custody." *Id.* "There is nothing that prohibits a court from looking back to the period of time that passed prior to the date the children were temporarily returned to a parent's care." *Id.*; *see also In re S.R.*, 10th Dist. Franklin No. 05AP-1356, 2006-Ohio-4983, ¶ 23; *In re M.K.*, 12th Dist. Preble No. CA2011-07-003, 2012-Ohio-36, ¶ 63. Accordingly, the trial court properly determined that the first prong was met.

{¶45} Mr. Marshall next contends that the evidence presented at the hearing "tended to show" that Ms. Henery was "working hard *throughout the pendency of the matter* to complete her case plan." (Emphasis added.)[2]

---

2. Although some of Mr. Marshall's arguments address the termination of Ms. Henery's parental rights rather than his own, courts have held that a parent has standing to do so. *See*, *e.g.*, *In re A.S.*, 9th Dist. Summit No. 23456, 2007-Ohio-2195, ¶ 10.

13

Case Nos. 2022-A-0090, 2022-A-0091

{¶46} We disagree with Mr. Marshall's characterization of the evidence. Prior to June 2020, Ms. Henery was not compliant with her case plan in several respects. While she subsequently demonstrated substantial compliance, this occurred well after ACCSB filed its motion for permanent custody. The "'12 of 22' provision[] set forth in * * * R.C. 2151.414(B)(1)(d) balance[s] the importance of reuniting a child with the child's parents against the importance of a speedy resolution of the custody of a child." *In re C.W.*, *supra*, at ¶ 22. As one court has explained, "In enacting R.C. 2151.414(B)(1)(d), * * * the Ohio General Assembly intended to provide a presumption that a parent who is unable to be reunified with the child within the twelve-month period is necessarily unable, unsuitable, or unfit to care for the child." *In re Workman*, 4th Dist. Vinton No. 02CA574, 2003-Ohio-2220, ¶ 39. "'Once the children have been in custody for 12 of the previous 22 months, the parents are presumed to be unfit and all the trial court must find is that granting permanent custody is in the best interests of the children.'" *Id.*, quoting *In re Fricke*, 3d Dist. Allen Nos. 1-02-75, 1-02-76, and 1-02-77, 2003-Ohio-1116, ¶ 9; *see also In re A.J.*, 11th Dist. Trumbull No. 2010-T-0041, 2010-Ohio-4553, ¶ 42-46 (applying *Workman*).

{¶47} Further, "the dispositive issue is not whether a parent has complied with the case plan, but whether the parent has substantially remedied the conditions that led to the children's removal." *In re R.A.D.*, 1st Dist. Hamilton Nos. C-200325 et al., 2021-Ohio-372, ¶ 21. "A parent's compliance with the case plan does not preclude a trial court from awarding custody to a children-services agency, as long as it is in the child's best interest." Thus, Ms. Henery's substantial compliance with the case plan after June 2020, by itself, was not dispositive.

14

{¶48} Mr. Marshall next contends that Capt. Chase's testimony was irrelevant and highly prejudicial. He argues that Capt. Chase testified to conditions at a building that no longer exists and where he never observed the children reside.

{¶49} Since Mr. Marshall failed to raise this evidentiary issue in his objections to the magistrate's decision, he has waived all but plain error. *See* Juv.R. 40(D)(3)(b)(iv). We find no plain error in the trial court's admission of Capt. Chase's testimony. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice." Evid.R. 403(A).

{¶50} Capt. Chase testified about the conditions of the Main Avenue property during the time period in which, by their own admissions, Mr. Marshall resided there, Mr. Marshall and Ms. Henery operated a business there, and Ms. Henery and the children lived there for a few days. Thus, Capt. Chase's testimony was relevant, as it provided context for the parents' admitted activities.

{¶51} In addition, Evid.R. 403(A) references evidence that is *unfairly* prejudicial. *Unfavorable* evidence is not equivalent to unfairly prejudicial evidence. *State v. Tate*, 11th Dist. Lake No. 2010-L-145, 2011-Ohio-6848, ¶ 49. Rather, evidence may be considered unfairly prejudicial when it tends to "arouse a jury's emotions," "evoke * * * a sense of horror," or "rouses an instinct to punish." *Id.* at ¶ 50. In a bench trial, the trial judge is presumed to possess the ability to remain objective when examining the

15

evidence. *State v. Mamounis*, 11th Dist. Trumbull No. 2003-T-0163, 2005-Ohio-2654, ¶ 28.

**{¶52}** Finally, Mr. Marshall challenges the trial court's determination under the second prong of the required analysis, i.e., that it was in the children's best interest to grant permanent custody to ACCSB. In determining the best interest of a child, the trial court shall consider all relevant factors, including, but not limited to, those set forth in R.C. 2151.414(D)(1)(a) through (e). R.C. 2151.414(D)(1).

**{¶53}** R.C. 2151.414(D)(1)(a) requires the trial court to consider "[t]he interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child[.]"

**{¶54}** Mr. Marshall contends that the evidence showed there was a positive bond between Ms. Henery and the children and that his interaction with the children was appropriate.

**{¶55}** The magistrate expressly found that the children are bonded to their parents and that the parents have participated in supervised visits. However, Mr. Marshall fails to acknowledge the remainder of the magistrate's findings, including that the children are thriving in the care of their foster mother where all of their needs are being met; the children are bonded to their foster mother; the parents' visits have not progressed to unsupervised visits due to their inappropriate behavior and case plan noncompliance; and the parents' virtual visits during the pandemic have been highly inconsistent and, at times, inappropriate. The magistrate's findings are supported by substantial competent, credible evidence in the record.

16

{¶56}  R.C. 2151.414(D)(1)(b) requires the trial court to consider "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child[.]"

{¶57}  Mr. Marshall states that the children wished to be returned to their parents and that the magistrate found the children were too young to express their wishes despite the fact that they had been appointed separate counsel.  However, Mr. Marshall does not accurately recite the magistrate's findings.  The magistrate found that the "children are too young to express their wishes independently; the children's wishes were expressed through the report, recommendation, and testimony of the Guardian ad Litem, and arguments of counsel."  Thus, the magistrate properly considered the children's wishes.

{¶58}  R.C. 2151.414(D)(1)(c) requires the trial court to consider "[t]he custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period * * *[.]"

{¶59}  Mr. Marshall again notes that the children were placed in Ms. Henery's care for a period of time in 2019 and suggests ACCSB did not have temporary custody for a *consecutive* 12-month period.  As explained above, however, Mr. Marshall's reading of the statute is incorrect.  Further, Mr. Marshall fails to acknowledge the children's full custodial history, including that ACCSB removed the children from Ms. Henery's care when it discovered she had stayed with them at the Main Avenue property where documented safety hazards existed.

17

{¶60}  R.C. 2151.414(D)(1)(d) requires the trial court to consider "[t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]"

{¶61}  Mr. Marshall points to the evidence at trial indicating that Ms. Henery began substantially complying with her case plan after June 2020 and that he had obtained housing and employment.  As explained above, however, the dispositive issue is whether the parents have substantially remedied the conditions that led to the children's removal. Mr. Marshall fails to acknowledge the magistrate's finding that neither parent had remedied the concerns that were the basis for the children's removal.  Specifically, both parents demonstrated ongoing instability in their lives with respect to employment and income, safe housing, substance abuse, and their relationship.  In addition, for over two years, neither parent was able to interact with the minor children in an unsupervised fashion.  The magistrate's findings are supported by substantial competent, credible evidence in the record.

{¶62}  Finally, R.C. 2151.414(D)(1)(e) requires the trial court to consider "[w]hether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."  The magistrate found no applicable factors under these subsections, and Mr. Marshall does not challenge this finding on appeal.

{¶63}  In sum, we conclude that clear and convincing evidence supported the trial court's granting permanent custody to ACCSB.

{¶64}  Mr. Marshall's first assignment of error is without merit.

18

**Reunification Efforts**

{¶65} In his second assignment of error, Mr. Marshall contends that ACCSB failed to show that it made reasonable reunification efforts prior to seeking permanent custody of the children.

{¶66} Mr. Marshall cites R.C. 2151.419(A)(1), which provides:

{¶67} "Except as provided in division (A)(2) of this section, *at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home*, the court shall determine whether the public children services agency * * * that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child *has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts.* If the agency removed the child from home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts. *In determining whether reasonable efforts were made, the child's health and safety shall be paramount*." (Emphasis added.)

{¶68} The Supreme Court of Ohio has held that "R.C. 2151.419(A)(1) does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413.

19

However, except for some narrowly defined statutory exceptions, the state must still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights. *If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time.*" (Emphasis added.) *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 43.

**{¶69}** Mr. Marshall argues that the fact ACCSB did not increase visitation or provide unsupervised visitation demonstrates it did not make reasonable reunification efforts.

**{¶70}** We disagree with Mr. Marshall's assertion. In determining whether the agency made reasonable efforts, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard. *In re Elliott*, 11th Dist. Ashtabula No. 2005-A-0018, 2006-Ohio-738, ¶ 16. The record shows that ACCSB made numerous reunification efforts, including adopting case plans for both parents; providing a caseworker; providing regular supervised visitation with the children; and even temporarily placing the children in Ms. Henery's care. During the pandemic, ACCSB continued to provide regular virtual visitation. The fact that visitation did not increase or become unsupervised was the result of the parents' own actions and behavior and not ACCSB's lack of effort.

**{¶71}** In sum, we conclude that clear and convincing evidence supported the trial court's determination that ACCSB made reasonable reunification efforts.

**{¶72}** Mr. Marshall's second assignment of error is without merit.

20

Case Nos. 2022-A-0090, 2022-A-0091

{¶73} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.


JOHN J. EKLUND, P.J.,

MATT LYNCH, J.,

concur.